IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br><br>                    Plaintiff,<br><br>    v.<br><br>E.S. ORIGINALS, INC.<br><br>                    Defendant. | CIVIL ACTION NO. 04-12714-WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, E.S. Originals, Inc. ("ESO"), moves for summary judgment dismissing this contract action on the grounds that it has satisfied all remedies available to Plaintiff, Rockport Company, LLC ("Rockport"), under the contract.

### BACKGROUND

The lawsuit arises out of a trademark license ("Agreement" or "Agr.," Ex. A to Shalom Dec.) between Rockport and ESO. Under that Agreement, ESO received an exclusive[1] license (Agr., ¶¶3, 32(b)) to develop and market a line of children's footwear carrying Rockport's marks. For the right to use those marks, ESO assumed, among other obligations,[2] an obligation to pay royalties to Rockport on those sales. (Agr., ¶¶11, 12). The royalties were paid quarterly, by "Contract Year." (Agr., ¶11). The Agreement was to run through June 30, 2005. (Agr. ¶1 (a)).

---

[1] Paragraph 32(b) of the Agreement provides that Rockport shall not use or license to others the marks in the territory in connection with children's footwear.

[2] ESO was required to maintain a certain level of marketing expenditures (Agr., ¶18(b)) and establish a showroom in New York City. (Agr., ¶19).

The Agreement, as amended (Agr., Amendment 3), provided for $2.4 million in minimum royalties, as follows:

| | |
|---|---|
| January 1, 2002 | $ 58,333.33 |
| April 1, 2002 | $ 58,333.33 |
| July 1, 2002 | $ 58,333.33 |
| October 1, 2002 | $ 58,333.33 |
| January 1, 2003 | $ 58,333.33 |
| April 1, 2003 | $ 58,333.33 |
| July 1, 2003 | $ 175,000 |
| October 1, 2003 | $ 175,000 |
| January 1, 2004 | $ 175,000 |
| April 1, 2004 | $ 175,000 |
| July 1, 2004 | $ 337,500 |
| October 1, 2004 | $ 337,500 |
| January 1, 2005 | $ 337,500 |
| April 1, 2005 | $ 337,500 |

Despite the size ($2.4 million) of this obligation, the Agreement gave ESO no right to terminate if the product line contemplated by the Agreement was unsuccessful. (Agr., ¶34).

By contrast, the Agreement provided little risk to Rockport, as Rockport would receive the minimum royalties above. The Agreement, however, also gave Rockport the option to terminate the Agreement if ESO failed to achieve certain minimum sales in each Contract Year. (Agr., ¶37). If the minimum sales were not made, Rockport could either (1) allow the Agreement to continue, and collect the minimum royalties,[3] or (2) terminate the Agreement, forgoing some of the minimum royalties, but gaining the freedom to award the exclusive license to another.

If Rockport terminated, the Agreement called for payment by ESO of the unpaid balance (i.e., the greater of actual royalties or minimum royalties) for the Contract Year in which the

---

[3] The minimum royalties were in an amount that was close to the actual royalties that would be due if the minimum sales were made.

termination occurred and any prior contract years. (Agr., ¶15). The Agreement did not require payment of minimum royalties for Contract Years that began after a termination. (Id.)

As it turned out, after the contract period began, ESO did not have sufficient consumer support to reach the minimum sales targets, despite ESO's investment of hundreds of thousands of dollars. (Shalom Dec. at ¶4, 5). At some point in late 2003, ESO determined that it was not sound business practice to continue to pay minimum royalties, since sales of the line were well below levels justifying those royalties. (Shalom Dec. at ¶7). In an effort to end its obligations in an amicable manner, ESO contacted Rockport to discuss its difficulties under the Agreement. (Shalom Dec. at ¶8). Rockport appeared to have understood and accepted that business decision. (Shalom Dec. at ¶9).

Accordingly, by letter dated January 12, 2004, Rockport elected to terminate the Agreement pursuant to ¶37, rather than allow it to run through June 30, 2005. (Ex. B to Shalom Dec.). Terminating the Agreement gave Rockport the ability to appoint a new exclusive licensee for the remainder of what had been the contract period. (Shalom Dec. at ¶¶ 10, 11).

Following the termination, ESO discontinued its sales efforts of new product and concentrated on selling off inventory during the sell-off period authorized by Rockport's termination letter. (Shalom Dec. at ¶13). ESO also cooperated in Rockport's successful efforts to obtain a new licensee. (Shalom Dec. at ¶10, 11).

ESO paid the minimum royalties due through June 30, 2004 (the end of the second "Contract Year" as defined by the Agreement). (Shalom Dec. at ¶14).

After the Agreement had been terminated and ESO paid the minimum royalties required by ¶15, ESO received a letter from Rockport demanding that ESO pay the minimum royalties for the third Contract Year. (Ex. C to Shalom Dec.). When ESO refused, Rockport brought this

action seeking damages for an alleged breach of the contract. ESO moves for summary judgment because no basis exists for Rockport's demand.

## ARGUMENT

The Agreement states that termination for any reason entitles Rockport to minimum royalty payments through the end of the contract year in which termination occurs. Since those payments have been made, Rockport is not entitled to further recovery, and summary judgment is thus proper.

Issues of contract interpretation are a matter of law, susceptible to determination by summary judgment.[4] Derrig v. Wal-Mart Stores d/b/a Sam's Club, 942 F. Supp. 49, 53 (D. Mass. 1996). In interpreting a contract, the language of the contract will control. If the language is ambiguous, the Court can consider extrinsic evidence. In all cases, the court construes the contract, if possible, in accord with the probable intent of the parties and to avoid an unreasonable or inequitable interpretation. New England Foundation Co., Inc. v. Commonwealth, 327 Mass 587, 596, 100 N.E.2d 6, 11 (Mass. 1951).[5]

In this case, the contract was terminated by Rockport during the second Contract Year, due to ESO's failure to meet certain sales figures. ESO, however, paid all minimum royalties through the end of that Contract Year. As explained below, the Agreement does not allow Rockport to recover any additional remedy.

### A.   Rockport Is Not Entitled to Royalties for the Third Contract Year

Paragraph 15 of the Agreement reads:

Payments upon Expiration or Termination. If this Agreement expires or is terminated for any reason before all payments hereunder have been made (including Guaranteed Minimum Royalties for the Contract Year in which such expiration or termination occurs), Licensee shall

---

[5] Under paragraph 50 of the Agreement, Massachusetts law applies.

immediately thereafter submit a report and <u>pay to Rockport any remaining unpaid balance for the Contract Year in which such expiration or termination occurs,</u> even though the due date therefore has not yet occurred, and <u>for any prior Contract Years</u>.

(emphasis added).

This language is unambiguous.  Upon termination, Rockport can only collect royalties due through the end of the Contract Year in which the termination occurred, and prior Contract Years.

Rockport claims the right to recover minimum royalties for the third Contract Year. Following termination, however, ESO had no obligation to pay royalties to Rockport unless the contract had such a post-termination provision.  See <u>Priestly v. Sharaf's, Inc.</u>, 4 Mass. App. Ct. 218, 222, 34 N.E.2d 905, 908.  (Mass. App. Ct. 1976).  The termination clause in the instant Agreement, however, obliges ESO only to pay minimums through the end of the second Contract Year.  It does not include the third year in its requirement for post-termination payments.  (Agr., ¶15).

The contract also required ESO, upon termination, to discontinue all use of the licensed marks.  (Agr., ¶39 (first 39)).  It would be inequitable for ESO to be required to cease all uses of the marks, yet have to continue to pay royalties as if it were still using the marks on goods.

In a similar situation, relating to minimum royalties in a mining operation, the 10th Circuit rejected a lessor's attempt to both cut off the lessee's ability to make actual sales, yet still collect royalties.  <u>Cal-Am Corp. v. Spence</u>, 659 F.2d 1034, 1038 (10th Cir. 1981).  Massachusetts courts have also refused similar attempts to <u>both</u> benefit from immediate termination and retain the right to future payments.  See, e.g. <u>Sutton v. Goodman</u>, 194 Mass. 389, 394-95, 80 N.E. 608, 609 (Mass 1907) (absent clause to pay rent lost due to termination, lessor opting to terminate the

lease had no claim to rent following termination).  It would be inequitable for Rockport to both demand payment of royalties, yet deny ESO the ability to sell licensed products.

In view of the clear language of the contract, ESO does not have to pay any royalty for the third Contract Year. The inequitable result from setting that language aside or otherwise construing the Agreement further supports ESO's interpretation.  Therefore, there is no genuine dispute on the issue, and summary judgment that Rockport is entitled to no further royalties or damages for the third Contract Year is appropriate.

### B. Rockport Is Entitled to No Further Damages For Any Pre-Termination Breach

Rockport alleges damage as a result of both a breach of the obligation to make "aggressive efforts" and an "implied duty of good faith."  The Agreement, however, by including minimum monthly royalties, guarded against any breach of such duties (or simply a failure to succeed) and effectively provided the measure of damages.  Since ESO paid these minimum royalties up until the end of the second Contract Year, summary judgment that Rockport is entitled to no damages award for any breach is proper.

Although remedies listed in a contract are not exclusive unless the parties intended that those remedies be exclusive, <u>Finkelstein v. Sneierson</u>, 273 Mass. 424, 173 N.E. 703, 704 (Mass. 1930), in this case, there can be no other equitable reading of the Agreement.  The parties anticipated a risk that the ESO's efforts would not be sufficient to Rockport; the termination and minimum royalties provisions were drafted as the remedies for such a situation.

Parties drafting a license agreement based upon sale of a product line to be introduced cannot easily determine what the sales, and thus the royalties, will turn out to be.  In this case, the Agreement protected Rockport from uncertainties associated with the introduction of a new line by providing a minimum income stream in the event that the line was not well received

commercially. Similarly, the Agreement gave Rockport the option to terminate the license in the event that ESO failed to reach acceptable minimum of sale, allowing Rockport to find another licensee, while collecting the minimum royalties through the end of the year of termination. On the other hand, the minimum royalty provision provided ESO with a cap on its exposure, should its efforts under the license fail. The Agreement thus contemplated a limitation of damages based upon minimum royalties and the right of termination.

This interpretation is evidenced by ¶15, which provides that the clause applies for payments upon termination for "any reason." Had the parties intended that further payments would be required if termination was due to breach, this section would not have referenced "any reason."

The minimum royalties and termination represent a bargained for exchange. Rockport had a guaranteed income during the term of the Agreement, and ESO had a set maximum outlay if it could not obtain high levels of sales. Because the minimum royalty and termination clause provided protection to both parties, the parties intended the difference between the actual royalties calculated under the contract and the minimum royalties to be the only obligations ESO had to Rockport in the event the license did not succeed. This was the evident intent of the parties. Therefore, ESO requests summary judgment that Rockport is due no further damages.

## CONCLUSION

The Agreement allowed Rockport to either continue to receive the minimum royalties, despite lagging sales, or terminate the Agreement and be subject to the limit on damages specified in ¶15, namely payment of royalties due (whether based upon actual sales or the minimum royalty provision) through the end of the Contract Year in which termination occurred. Rockport made its choice and should be so bound.

For the above stated reasons, ESO requests that summary judgment be entered against Rockport.

Date:  March 16, 2005

Respectfully submitted,

E.S. ORIGINALS, INC.

by its attorneys,

         /s/ Laura Topper
James J. Foster, Esq. BBO #553285
jfoster@wolfgreenfield.com
Laura Topper, Esq.  BBO #652364
ltopper@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
Fax: (617) 646-8646