UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br>    Plaintiff,<br><br>v.<br><br>E. S. ORIGINALS, INC.,<br>    Defendant. | Civil Action No. 04-12714-WGY |

**PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

  Plaintiff, The Rockport Company, LLC ("Rockport"), hereby opposes the Motion for Summary Judgment by defendant, E. S. Originals, Inc. ("ESO").  As grounds for this Opposition, and as set forth fully below, ESO's Motion should be denied because ESO has not established an absence of genuine issues of material fact or that it is entitled to summary judgment as a matter of law.

**STATEMENT OF FACTS**

  In or about October 2001, Rockport and ESO entered into a license agreement ("License Agreement") whereby Rockport granted ESO an exclusive license with respect to certain children's footwear (the "Licensed Products").[1]  ESO provided various consideration in exchange for this exclusive license, which included paying royalties (or minimum guaranteed royalties) and committing to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory [i.e., the entire United

---

[1]   A true copy of the License Agreement is attached to the Affidavit of Richard Paterno ("Paterno Affidavit") as Exhibit A.

23804.17/00914136             1

States]...."[2]  While both of these categories of consideration were material to Rockport's willingness to grant ESO an exclusive license, the non-monetary consideration was even more important to Rockport, and it would not have entered into the License Agreement if that consideration was absent.[3]

Even though ESO failed to reach the sales targets set forth in the License Agreement during either of the first two contract years, and had to pay certain minimum guaranteed royalties, ESO never indicated that it was considering repudiating its obligations under the License Agreement.[4]  To the contrary, ESO's conduct and comments to Rockport indicated that ESO was committed to continuing to make its relationship with Rockport a financial success.[5]  Accordingly, Rockport was stunned when it was informed by ESO in or about late September of 2003 that it would no longer continue the Rockport business and that ESO was shutting down its Rockport division.[6]

Because having someone take over ESO's obligation to design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products was so important to Rockport, it immediately tried to find a new licensee.[7]  While Rockport ultimately entered into a new license agreement (the "Second License Agreement") with BBC International, LLC ("BBC"), BBC was not able to have a full line of Licensed Products placed in retail stores until the Spring of 2005.[8]  Moreover, the financial terms of the Second License Agreement are

---

[2] License Agreement at ¶ 18(a).
[3] Paterno Affidavit at ¶ 5.
[4] Paterno Affidavit at ¶ 6.
[5] Paterno Affidavit at ¶ 6; Affidavit of Martha Blue ("Blue Affidavit") at ¶¶ 4-5.
[6] Paterno Affidavit at ¶¶ 7-8; Blue Affidavit at ¶¶ 6-7.
[7] Paterno Affidavit at ¶ 9; Blue Affidavit at ¶ 8.
[8] Paterno Affidavit at ¶ 10.  A true copy of the Second License Agreement is attached to the Paterno Affidavit as Exhibit B.

not as favorable to Rockport as were the terms of the ESO License Agreement.[9] For instance, the minimum guaranteed royalties to which Rockport would have been entitled under the final year of the ESO License Agreement was $1,350,000, while under the BBC License Agreement, the minimum guaranteed royalties amount to approximately $187,500 over that same period of time.[10]

Finally, while Rockport did formally send a letter to ESO terminating the License Agreement ("Termination Letter"), Rockport never waived any right to damages it had based on ESO's contract breaches or otherwise.[11] To the contrary, in the Termination Letter Rockport expressly "reserve[d] all its rights under the [License] Agreement and otherwise."[12]

## ARGUMENT

### I.   Summary Judgment Standards

As this Court is well aware, summary judgment should not be granted unless there are no material facts in dispute and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Therefore, for the moving party to have a chance to prevail, it "must inform the court of the basis of its motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'which it believes demonstrate the absence of a genuine issue of material fact.'" Rand v. M/A Com, Inc., 824 F. Supp. 242, 256 (D. Mass. 1992) (quoting Winter Hill Frozen Foods & Services, Inc. v. Haagen-Dazs Co., 691 F. Supp. 539 (D. Mass. 1988)). "Conclusory assertions that the nonmoving party has no evidence to prove its case

---

[9]   Second License Agreement ¶ 12 and Exh. F; License Agreement ¶ 12 and Exh. D.
[10]  Second License Agreement ¶ 12; License Agreement ¶ 12.
[11]  Termination Letter, a true copy of which is attached to the Paterno Affidavit as Exhibit C.
[12]  Paterno Affidavit, Exh. C.

are insufficient. Rather, the moving party must affirmatively show the absence of evidence in the record." Rand, 824 F. Supp. at 256 (citing Celotex Corp., 477 U.S. at 328).

When considering a motion for summary judgment,"[t]he Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." Quercia v. Allmerica Financial, 84 F. Supp. 2d 222, 224 (D. Mass. 2000) (citing O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993)); see also Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 187 (1st Cir. 1997); Aponte-Santiago v. Lopez-Rivera, 957 F.2d 40, 41 (1st Cir. 1992). Therefore, all Rockport ultimately needs to do in order to avoid summary judgment is show that it at least has a "toehold" on which to base its claims. Adams v. Starwood Hotels & Resorts Worldwide, 253 F. Supp. 2d 76, 85 (D. Mass. 2003).

II.     **ESO Has Not Established The Absence Of Genuine Issues Of Material Fact Or That It Is Entitled To Summary Judgment As A Matter Of Law**

One of the flaws in reasoning that permeates and undercuts virtually every argument ESO makes in its supporting memorandum ("ESO's Memorandum") is the implicit and incorrect assumption that the only consideration provided to Rockport pursuant to the License Agreement was money. This fallacy is made clear on page 7 of ESO's Memorandum, where it is says:

> The minimum royalties and termination represent a bargained for exchange. Rockport had a guaranteed income during the term of the Agreement, and ESO had a set maximum outlay if it could not obtain high levels of sales. Because the minimum royalty and termination clause provided protection to both parties, *the parties intended the difference between the actual royalties calculated under the contract and the minimum royalties to be the only obligation ESO had to Rockport in the event the license did not succeed*. [Emphasis added.]

What ESO either purposefully or negligently ignores, however, is that it also provided non-monetary consideration, including its agreement to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory." License Agreement at ¶ 18(a). Indeed, this non-monetary consideration was

actually more important to Rockport than was the payment of royalties (or minimum guaranteed royalties). Paterno Affidavit at ¶ 5. Moreover, it was ESO's breach of its non-monetary obligations that forms the basis of Rockport's Complaint. Complaint ¶ 10.

### A. ESO's Argument That "Rockport Is Not Entitled to Royalties for the Third Contract Year" Is Based On A Mischaracterization Of Rockport's Claims

The argument in ESO's Memorandum under the heading "Rockport Is Not Entitled to Royalties for the Third Contract Year," reduces to the following:

(i) Rockport's claims for breach of contract and breach of the covenant of good faith and fair dealing are based on ESO's failure to make minimum sales.

(ii) Rockport's sole remedy if ESO fails to make minimum sales is to terminate the License Agreement and be paid minimum guaranteed royalties for the year in which the contract was terminated.

(iii) Therefore, because Rockport has terminated the License Agreement and been paid the minimum guaranteed royalties for the year in which the contract was terminated, Rockport is not entitled to any other damages, and its claim fails.

While this argument presents a nice syllogism, its underlying premise, that Rockport's claims are based on ESO's failures to make minimum sales, simply is wrong. Indeed, it is telling that nowhere in ESO's Memorandum does ESO address the following actual allegations in Rockport's Complaint:

> 10. E.S.O. materially breached the Contract, *inter alia*, by failing to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory."
>
> 11. As a result of E.S.O.'s material breach of Contract, Rockport has been injured and suffered substantial damages.
>
> \* \* \*
>
> 14. E.S.O. breached the implied covenant of good faith and fair dealing contained in the Contract by, *inter alia*, its conduct as described above.

>   15.  As a result of E.S.O.'s breach of the covenant of good faith and fair dealing, Rockport has been injured and suffered substantial damages.

As these allegations and the Paterno and Blue Affidavits make clear, Rockport's claim for breach of contract is that it suffered damages as a result of ESO's breach of its obligation to aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory.  Likewise, the factual predicate for Rockport's claim for breach of the covenant of good faith and fair dealing is that ESO's failure to aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory destroyed or injured Rockport's right to receive the fruits of the License Agreement.  See Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir. 1936) (holding that neither party should do anything to injure or destroy the right of the other party to receive the fruits of the contract); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72, 583 N.E.2d 806, 820 (1991) (affirming a ruling that one party's action destroyed or injured the other party's right to receive the fruits of the contract and thus violated the implied covenant of good faith and fair dealing).

In sum, because ESO has not established any reason why Rockport could not prevail on its actual claims, as opposed to the claims ESO misrepresents Rockport to have made, ESO's first argument is a non-sequitor that does not establish ESO's entitlement to summary judgment.

    **B.**    **ESO's Argument That Rockport Is Not Entitled To "Damages For Any Pre-Termination Breach" Has No Merit**

The second argument made by ESO is that even if it breached the License Agreement or violated the covenant of good faith and fair dealing, Rockport's only remedy is to recover the liquidated damages "evidenced by ¶ 15" of the License Agreement.  ESO's Memorandum at p. 7.  Nevertheless, all paragraph 15 of the License Agreement says is the following:

> If this Agreement expires or is terminated for any reason before all payments hereunder have been made (including Guaranteed Minimum Royalties for the Contract Year in which such expiration or termination occurs), Licensee shall immediately thereafter submit a report and pay to Rockport any remaining unpaid balance for the Contract Year in which such expiration or termination occurs, even though the due date therefore has not yet occurred, and for any prior Contract Years.

Paragraph 15 does not say that it is intended by the parties to be an overarching liquidated damages provision applicable to any possible wrong that ESO might commit, and there is nothing to imply that it was so intended. In fact, not only does paragraph 3 of the Paterno Affidavit leave no doubt that this was <u>not</u> Rockport's understanding, but that Affidavit stands uncontradicted by ESO.

Rockport also respectfully suggests that construing paragraph 15 to be a liquidated damages provision applicable to the claims asserted in this case would be nonsensical and irrational because nothing suggests that the amount of minimum guaranteed royalties could bear any relationship to actual damages that might be caused by ESO failing to aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products. <u>Compare</u> <u>Kelly v. Marx</u>, 428 Mass. 877, 878, 705 N.E. 2d 1114, 1115 (1999) ("a liquidated damages clause in a purchase and sale agreement will be enforced where at the time the agreement is made . . . the clause was a reasonable forecast of damages expected to occur in the event of a breach."). As such, this Court should not adopt the construction of paragraph 15 promoted by ESO. <u>See</u> <u>Garbincius v. Boston Edison Co.</u>, 621 F.2d 1171, 1177 (1st Cir. 1980) ("Contracts, where possible, are to be construed to reach a sensible result") (citing <u>Clark v. State Street Trust Co</u>, 270 Mass. 140 (1930)). <u>See</u> <u>also</u> <u>Finn v. McNeil</u>, 23 Mass. App. Ct. 367, 372, 502 N.E.2d 557, 561 (1987) (contracts are to be "'given a construction which will make [them] . . . rational business instrument[s] . . .'") (quoting <u>Bray v. Hickman</u>, 263 Mass. 409, 412 (1928)).

Finally, even if paragraph 15 was intended to be some type of liquidated damages provision, *even ESO acknowledges that "remedies listed in a contract are not exclusive unless the parties intended that those remedies be exclusive . . . ."* ESO's Memorandum at p. 6 (citing Finkelstein v. Sneierson, 273 Mass. 424, 427-28, 173 N.E. 703, 704 (1930)). Again, however, *the only evidence before this Court as to the intention of the parties is that they did not intend paragraph 15 to set forth exclusive remedies for all breaches of contract.* See Paterno Affidavit at ¶ 3.

### C. ESO's Motion Should Be Denied Pursuant To Fed. R. Civ. P. 56(f)

Rule 56(f) of the Federal Rules of Civil Procedure provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Here, not only has no discovery been taken, but ESO has not even served Rockport with its Automatic Disclosure Statement. Paterno Affidavit at ¶ 12. Thus, even if there were a kernel of merit to any of ESO's arguments, discovery in the form of depositions of current and former ESO employees and documents might well provide additional substantive reasons for denying ESO's Motion. See id. ¶¶ 6-10; Blue Affidavit at ¶ 6. Accordingly, it would be premature at the embryonic stage of this litigation to award ESO summary judgment under any circumstances.

### CONCLUSION

Construing all of the facts and reasonable inferences in Rockport's favor leaves no doubt that ESO has fallen woefully short of establishing an absence of genuine issues or an entitlement

to judgment as a matter of law.  Accordingly, Rockport respectfully requests that this Court deny ESO's Motion for Summary Judgment.

                                                Respectfully submitted,

                                                **THE ROCKPORT COMPANY, LLC**
                                                By its attorneys

                                                /s/ Victoria L. Walton
                                                Shepard Davidson, Esq. (BBO#557082)
                                                Victoria L. Walton, Esq. (BBO #650999)
                                                Burns & Levinson LLP
                                                125 Summer Street
                                                Boston, MA 02110
                                                (617) 345-3000
                                                sdavidson@burnslev.com
                                                vwalton@burnslev.com

Dated:  March 30, 2005