UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
THE ROCKPORT COMPANY, LLC,          )
            Plaintiff,              )
                                    )
v.                                  )   Civil Action No. 04-12714-WGY
                                    )
E. S. ORIGINALS, INC.,              )
            Defendant.              )
_____)

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS RELATED TO ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1 and in support of its Opposition to Defendant's Motion for Summary Judgment, Plaintiff The Rockport Company, LLC ("Rockport") states that to the extent that Defendant's Statement of Undisputed Facts purports to characterize or describe the terms of a license agreement between Rockport and Defendant, the agreement speaks for itself.  To the extent that Defendant sets forth other facts in its Statement of Undisputed Facts, pursuant to Fed. R. Civ. P. 56(f), Rockport states that it has not yet been provided the opportunity to conduct discovery with respect to those facts and is unable to specifically admit or deny those facts.  In addition, Rockport states that a number of factual allegations set forth in Defendant's Statement of Undisputed Facts are not material to Rockport's claim and are thus not material to a decision on summary judgment.  Further, the facts in Defendant's Statement of Undisputed Facts are deemed denied to the extent they are contradicted by the Plaintiff's Statement of Material Facts set forth herein.

Rockport hereby submits its concise statement of material facts of record to which it contends there is no genuine dispute:

1.     In or about October 2001, Rockport and ESO entered into a license agreement ("License Agreement") whereby Rockport granted ESO an exclusive license with respect to certain children's footwear (the "Licensed Products").[1]

2.     ESO provided various consideration in exchange for this exclusive license, which included paying royalties (or minimum guaranteed royalties) and committing to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory [i.e., the entire United States]...."[2]

3.     While both of these categories of consideration were material to Rockport's willingness to grant ESO an exclusive license, the non-monetary consideration was even more important to Rockport, and it would not have entered into the License Agreement if that consideration was absent.[3]

4.     Even though ESO failed to reach the sales targets set forth in the License Agreement during either of the first two contract years, and had to pay certain minimum guaranteed royalties, ESO never indicated that it was considering repudiating its obligations under the License Agreement.[4]  To the contrary, ESO's conduct and comments to Rockport indicated that ESO was committed to continuing to make its relationship with Rockport a financial success.[5]

---

[1]  A true copy of the License Agreement is attached to the Affidavit of Richard Paterno ("Paterno Affidavit") as Exhibit A.
[2]  License Agreement at ¶ 18(a).
[3]  Paterno Affidavit at ¶ 5.
[4]  Paterno Affidavit at ¶ 6.
[5]  Paterno Affidavit at ¶ 6; Affidavit of Martha Blue ("Blue Affidavit") at ¶¶ 4-5.

5. Accordingly, Rockport was stunned when it was informed by ESO in or about late September of 2003 that it would no longer continue the Rockport business and that ESO was shutting down its Rockport division.[6]

6. Because having someone take over ESO's obligation to design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products was so important to Rockport, it immediately tried to find a new licensee.[7]

7. While Rockport ultimately entered into a new license agreement (the "Second License Agreement") with BBC International, LLC ("BBC"), BBC was not able to have a full line of Licensed Products placed in retail stores until the Spring of 2005.[8]

8. Moreover, the financial terms of the Second License Agreement are not as favorable to Rockport as were the terms of the ESO License Agreement.[9] For instance, the minimum guaranteed royalties to which Rockport would have been entitled under the final year of the ESO License Agreement was $1,350,000, while under the BBC License Agreement, the minimum guaranteed royalties amount to approximately $187,500 over that same period of time.[10]

9. Finally, while Rockport did formally send a letter to ESO terminating the License Agreement ("Termination Letter"), Rockport never waived any right to damages it had based on ESO's contract breaches or otherwise.[11] To the contrary, in the Termination Letter Rockport expressly "reserve[d] all its rights under the [License] Agreement and otherwise."[12]

---

[6] Paterno Affidavit at ¶¶ 7-8; Blue Affidavit at ¶¶ 6-7.
[7] Paterno Affidavit at ¶ 9; Blue Affidavit at ¶ 8.
[8] Paterno Affidavit at ¶ 10. A true copy of the Second License Agreement is attached to the Paterno Affidavit as Exhibit B.
[9] Second License Agreement ¶ 12 and Exh. F; License Agreement ¶ 12 and Exh. D.
[10] Second License Agreement ¶ 12; License Agreement ¶ 12.
[11] Termination Letter, a true copy of which is attached to the Paterno Affidavit as Exhibit C.
[12] Paterno Affidavit, Exh. C.

       Respectfully submitted,

       **THE ROCKPORT COMPANY, LLC**
       By its attorneys

       /s/Victoria L. Walton
       Shepard Davidson, Esq. (BBO#557082)
       Victoria L. Walton, Esq. (BBO #650999)
       Burns & Levinson LLP
       125 Summer Street
       Boston, MA 02110
       (617) 345-3000
       sdavidson@burnslev.com
       vwalton@burnslev.com

Dated: March 30, 2005