IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>E.S. ORIGINALS, INC.,<br><br>        Defendant. | CIVIL ACTION NO. 04-12714-WGY |

DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
(LEAVE TO FILE GRANTED APRIL 25, 2005)

Rockport opposed ESO's Motion for Summary Judgment, claiming that there were material issues of fact. There are, however, no issues of fact that would prevent the granting of summary judgment.

The following facts are undisputed:[1]

1. Rockport chose to terminate the Agreement on January 12, 2004, rather than let it run through June 30, 2005. (P. St. of Facts, ¶ 9).[2] Even prior to this termination Rockport had entered into a new license agreement with another company. (Ex. B to Affidavit of Richard Paterno, filed by Rockport);

---

[1] Although Rockport's filing was not a clear response to ESO's statement of undisputed facts, it appears the recited facts are not denied by Rockport, and are thus deemed admitted pursuant to Local Rule 56.1.

[2] All citations refer to documents previously filed in support of the Motion for Summary Judgment or the Opposition.

890126

2.     Paragraph 15 of the Agreement unambiguously provides that guaranteed minimum royalties need only be paid through the end of the Contract Year in which the termination (for any reason) occurred. (Agr., ¶ 15); and

3.     ESO paid the guaranteed minimum royalties through June 30, 2004, the end of the Contract Year in which the Agreement was terminated by Rockport. (D. St. Facts, ¶ 16).

Based upon these facts, ESO argued that since Rockport chose to terminate, whatever the reason for termination, the amount that Rockport could receive as compensation was limited to the royalties due under the Agreement. Since those royalties had been paid, ESO satisfied all remedies available to Rockport.[3]

Rockport appeared to accept ESO's initial premise that, due to Paragraph 15 of the Agreement, Rockport cannot receive the guaranteed minimum royalties for the third Contract Year. In an attempt to avoid that clause, Rockport contended that ESO breached the contract by failing to provide certain non-monetary consideration, which it described as "even more important" than royalties. (Opp. at 5). However, the Complaint did not ask for specific performance, only damages.

The monetary remedy for breach of contract is measured by the injured party's reasonable expectation of the position it would have been in upon full performance of the contract. Bucholz v. Green Bros. Co., 272 Mass. 49,54, 172 N.E. 101,103 (Mass. 1930) (damage for breach is to put one in as good condition financially as if there had been no breach and plaintiff had completed the contract). In this case, the parties

---

[3] Rockport mischaracterized this argument as one for "liquidated" damages. (Opp. at 6-8). ESO's Memorandum, however, did not mention "liquidated" damages.

defined in the Agreement Rockport's expectations from fulfillment of contract by specifying guaranteed minimum royalties (which were close to the actual royalties that would have been due if the minimum sales were made).

Rockport argued that "nothing suggests" that the minimum guaranteed royalties could bear any relationship to what position Rockport would have been in if there had been no breach. (Opp. at 7). But the minimum royalties (which would have been $2.4 million for the entire three year term, had Rockport not terminated) were obviously substantial.[4] In such circumstances, the burden of showing a disparity between the amount fixed by the parties and a fair value would be on the plaintiff. See Stop & Shop, Inc. v. A. John Ganem, 347 Mass. 697,703, 200 N.E.2d 248,252 (1964).

In response to ESO's Motion, which was supported by the Agreement, Rockport offered no evidence, beyond a conclusory statement that the non-monetary aspects were more important to Rockport, that its alleged damage from breach of the "non-monetary" obligations was of a value above that of the royalties it received from ESO. In opposing a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e); see also DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (non-moving party cannot rely on conclusory allegations, improbable inferences and unsupported speculation). Since Rockport did not attempt to meet that burden, summary judgment should be granted.

---

[4] As it turned out, the amount fixed was higher than the market would support. Even prior to the termination, the royalties that otherwise would have been due were less than the minimums.

890126.1                                3

In short, based on the evidence of record, had Rockport elected not to terminate, its expectation under the Agreement would have been to collect the contractual minimum for the Third Contract Year. Instead, it elected the remedy of termination, which, as expressly included in Paragraph 15 of the Agreement, ended ESO's royalty obligation as of the Contract Year in which termination occurred.

Regardless of the nature of the breach, the remedy is the same.

## CONCLUSION

For the above stated reasons and the reasons advanced in ESO's Memorandum In Support of Its Motion for Summary Judgment, ESO's Motion should be granted.

Date: April 22, 2005

Respectfully submitted,
E.S. ORIGINALS, INC.
by its attorneys,

    /s/ James J. Foster
James J. Foster, Esq. BBO #553285
jfoster@wolfgreenfield.com
Laura Topper, Esq.  BBO #652364
ltopper@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
Fax: (617) 646-8646