IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>E.S. ORIGINALS, INC.<br><br>                    Defendant. | CIVIL ACTION NO. 04-12714-WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, E.S. Originals, Inc. ("ESO"), moves for summary judgment dismissing this contract action on the grounds that Plaintiff, Rockport Company, LLC ("Rockport"), has no evidence of damages.

**BACKGROUND**

The lawsuit arises from a trademark license ("Agreement" or "Agr.," Ex. A to the Declaration of Morris Shalom, filed March 16, 2005, "Shalom Dec.") between Rockport and ESO. That Agreement gave ESO an exclusive license (Agr., ¶¶ 3, 32(b)) to develop and market for three Contract Years a line of children's footwear carrying Rockport's marks. For the right to use those marks, ESO agreed, among other things,[1] to pay royalties (including guaranteed annual minimum royalties) to Rockport on those sales. (Agr., ¶¶ 11, 12). Rockport had the right to terminate if ESO did not meet certain sales minimums. (Agr., ¶ 37). If the contract were terminated, ESO would be required to pay the guaranteed annual minimum royalty, without

---

[1] ESO also agreed to aggressively sell the products (Agr., ¶ 18(a)), maintain a certain level of marketing expenditures (Agr., ¶ 18(b)), and establish a showroom in New York City. (Agr., ¶ 19).

proration, for the Contract Year in which termination occurred. (Agr., ¶¶12(a), 15). The Agreement, if not otherwise terminated, was to end June 30, 2005.

After the Agreement was executed, ESO began to develop the business associated with the Agreement. (Shalom Dec., ¶ 3). The Rockport-branded product line, however, did not gain consumer support. (Shalom Dec., ¶ 5). Despite considerable effort by ESO, sales did not reach the minimums required by the Agreement. (Shalom Dec., ¶ ¶ 4, 5, 6). Faced with continued unprofitability, in October 2003, three months into the second Contract Year,[2] ESO notified Rockport that it had to shut down its Rockport division. Rockport has alleged that this breached ESO's obligation to aggressively market under the Agreement. (D.I. No. 16 at 6).

The Agreement gave Rockport a choice of remedies. Since the Agreement did not give ESO a right to terminate, Rockport could have let the Agreement run its course. In that event, Rockport would collect from ESO the guaranteed annual minimum royalty for the third Contract Year.

Instead, on January 12, 2004, Rockport exercised its contractual option (Agr., ¶ 37) to terminate the Agreement, citing the insufficient sales.[3] (Ex. B to Shalom Dec.). Although termination forfeited the contractual right to a minimum guaranteed royalty from ESO for the third Contract Year (July 1, 2004 – June 30, 2005), Rockport gained the right to appoint a new exclusive licensee for the remainder of what had been the contract term, and collect royalties from that licensee, which it did. (Agr., ¶ 32(b); Shalom Dec. at ¶ ¶ 10, 11; Stipulation, ¶ 2).

In the short run, terminating the Agreement (as opposed to allowing it to continue) turned out to be a bonanza for Rockport. For sales through June 30, 2004, the end of the second

---

[2] As defined by the Agreement, the second Contract Year was July 1, 2003 – June 30, 2004.

[3] Rockport could also have given a notice of breach (Agr., ¶ 34) and terminated if the breach continued for 30 days after the notice.

Contract Year, Rockport received $258,804 in royalties from the new licensee, BBC International ("BBC"), on top of the $700,000 annual minimum royalty Rockport collected from ESO for the second Contract Year. (Shalom Dec., ¶ 14, Agr. ¶ 15; Stipulation, Topper Decl., Ex. C).

Several months ago, ESO moved for summary judgment dismissing the action on the basis that ESO had paid all royalties due under the Agreement. (D.I. No. 12). After Rockport argued, in opposition, that damages other than royalties could have been caused by ESO's failure to "aggressively market" the products (D.I. No. 16), the Court denied the motion.

Rockport has since disclosed, however, that it has no evidence of such damages. Accordingly, the Court should now grant summary judgment for ESO.

## ARGUMENT

Issues of contract interpretation are a matter of law, susceptible to determination by summary judgment. Derrig v. Wal-Mart Stores d/b/a Sam's Club, 942 F. Supp. 49, 53 (D. Mass. 1996). In interpreting a contract, the language of the contract will control. If the language is ambiguous, the Court can consider extrinsic evidence. In all cases, the court construes the contract, if possible, in accord with the probable intent of the parties and to avoid an unreasonable or inequitable interpretation. See New England Foundation Co., Inc. v. Commonwealth, 327 Mass. 587, 596, 100 N.E.2d 6, 11 (Mass. 1951).

In this case, the contract was terminated by Rockport during the second Contract Year because ESO did not meet certain sales figures. ESO paid the guaranteed annual minimum royalty for the second Contract Year. The early termination removed any contractual obligation to pay an annual minimum royalty for the third Contract Year. (Agr., ¶ 15). As explained below, Rockport has no evidence of other damages.

### A. Because Rockport Terminated, the Agreement Does Not Require Royalties for the Third Contract Year

Having terminated the Agreement in the middle of the second Contract Year, Rockport gave up its contractual right to guaranteed minimum royalties for the third Contract Year. Paragraph 12 of the Agreement provides that the amount of royalties "during any Contract Year <u>included in the Term</u>" (emphasis added) could not be less than the agreed guaranteed minimum. The "Term" is defined in ¶1 as the Initial Term and any Renewal Term, and "Initial Term" is defined as the period expiring on June 30, 2005 "<u>or on such earlier date as any party may terminate</u> this Agreement in accordance with its terms" (emphasis added). (Agr., ¶ 1(b)). Rockport's terminating the Agreement ended the "Term" before the beginning of the third Contract Year and thus extinguished any guarantee for an annual minimum royalty for the third Contract Year.

Consistent with the above, ¶15 of the Agreement unambiguously reads:

> **Payments upon Expiration or Termination**. If this Agreement expires or is terminated **for any reason** before all payments hereunder have been made (including Guaranteed Minimum Royalties for the Contract Year in which such expiration or termination occurs), Licensee shall immediately thereafter submit a report and **pay to Rockport any remaining unpaid balance for the Contract Year in which such expiration or termination occurs**, even though the due date therefore has not yet occurred, and for any **prior** Contract Years.

(emphasis added).

Thus, the Agreement only obligated ESO to pay a guaranteed annual minimum royalty for the Contract Year in which the termination occurred (and prior Contract Years).

Following termination, ESO had no obligation to pay royalties to Rockport unless the contract had such a post-termination provision. See <u>Priestly v. Sharaf's, Inc.</u>, 4 Mass. App. Ct. 218, 222, 344 N.E.2d 905, 908 (Mass. App. Ct. 1976). The termination clause in the instant Agreement, however, obliged ESO only to pay a guaranteed annual minimum royalty through

the second Contract Year.  It did not require post-termination payments for the third year.  (Agr., 1(b), ¶ 12(a), 15).

Rockport may argue, as it did in response to the earlier summary judgment motion, that its right to terminate is "without prejudice to any other rights it may have," as specified in ¶ 37. That clause cannot be read to negate the specific language cited above that limits guaranteed annual minimum royalties to Contract Years that begin prior to termination.  See 5 Corbin on Contracts § 24.23 (Revised ed. 1998) ("If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term."); Restatement (Second) of Contracts § 203 (1981) ("[S]pecific terms and exact terms are given greater weight than general language…."); Arcari v. Marder, 225 B.R. 253, 256 (D. Mass. 1998) ("Massachusetts case law follows the Restatement in requiring that any inconsistency be resolved in favor of the more specific provisions.").  As such, Rockport cannot collect royalties beyond the second Contract Year.

      **B.**    **Rockport Has No Evidence of Any Other Damages for Any Breach**

A plaintiff must demonstrate reasonably specific damages in order to make out a contract claim.  Kiely v. Raytheon Co., 914 F. Supp. 708, 714 (D. Mass. 1996) ("Proof that reasonably specific damages were caused by the defendant's breach is essential to a contract claim.") (citations omitted); aff'd, 105 F.3d 734 (1st Cir. 1997).  As explained in Stark v. Patalano Ford Sales, Inc., 30 Mass. App. Ct. 194, 567 N.E.2d 1237 (Mass. App. Ct. 1991):

> Although we recognize that loss-of-use damages are not susceptible of exact pecuniary computation, **there must be some evidence to provide a reasonable basis by which the jury may measure the loss.** "When ... damages are sought they must be proved and not left, as here, to speculation. 'This is simply a concrete application of the wider principle ... that the complaining party must

>establish his claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis.'"

Id. at 202, 567 N.E. 2d at 1242 (emphasis supplied) (internal citations omitted).  See also Snelling and Snelling v. Wall, 345 Mass. 634, 189 N.E. 2d 231 (Mass. 1963).  Rockport has admitted having no evidence.

In its initial Fed. R. Civ. P. 26(a)(1) disclosures, Rockport stated its damages calculation:

> Computation of Damages
>
> Rockport is unable at this time to provide a computation of its damages with respect to its claims, but will engage an expert to determine the extent of those damages.  Rockport will supplement this section of its Automatic Disclosure Statement once the expert has made its determination.

(Ex. A to Attached Declaration of L. Topper at § C).

The parties were required to designate experts by August 18, 2005, (D.I. No. 9, entered by electronic order dated March 3, 2005), but Rockport designated no expert.

ESO then deposed Rockport on "Rockport's damages resulting from ESO's breach of the License Agreement."[4]

At that deposition, Rockport testified that these damages would be the difference between the value of the ESO license with Rockport and the BBC license with Rockport.  (Ex. B to Dec. of L. Topper, Transcript of Deposition of Rockport, dated August 31, 2005 (henceforth "Tr.") at 7).  The value of the licenses would fall into two components: "one is the value of the marketing activities that ESO was supposed to have performed under the license agreement, and the other would be the value of the royalty payments that ESO was supposed to have made to Rockport under the license agreement."  (Tr. at 8).

---

[4] Rockport designated John Livingston, counsel to Rockport's parent company, Reebok, as its witness on damages.

From this testimony, it appears that Rockport claims its damages are (1) royalties for the Third Contract Year less royalties Rockport obtained from BBC for the period ending June 30, 2005, and (2) the difference in the "value of the marketing activities" received from BBC from those that it would have received from ESO. Rockport cannot recover for the first category, as discussed in Section A above. Nor can Rockport recover for the second category, because it has no evidence of such damages, and has admitted as much.

At its 30(b)(6) deposition, Rockport was repeatedly asked about this latter category of damages. For example:

> Q: [Y]ou said there was another component that there were some value in the marketing activity of ESO; what is or was that value?
>
> **A: We're not able to quantify that value at this time.**
>
> Q: When do you expect you'll be able to quantify it?
>
> A: I don't know.
>
> Q: Well, we have a discovery deadline coming up pretty soon, do you anticipate quantifying it before that deadline expires?
>
> A: I don't know.

(Tr. at 11-12) (emphasis supplied).

> Q: Can you tell me what the difference is—you testified with respect to both license agreements that there was a component in valuing the agreement, a component with respect to marketing activities; can you tell me what, if any, was the difference in value between the marketing activities of BBC versus that of ESO?
>
> A: I don't know.
>
> Q: Do you have any evidence that there was any difference at all?
>
> **A: I don't have any evidence one way or the other.**

(Tr. at 14) (emphasis supplied).

937808.3                                     7

>A: As I testified earlier, the other component of our damages is the value of the marketing of the Rockport brand under the respective contracts.
>
>Q: Right. And what is the evidence of the difference in value caused by the breach; **do you have any such evidence?**
>
>**A: Not at this time, no.**

(Tr. at 15-16) (emphasis supplied).

>Q: … [D]o you have any evidence of other damages?
>
>A: Other than what I've already testified to, no, I don't believe so.
>
>…
>
>Q: Putting the level of quantification aside, **do you have any evidence that the value of the marketing activities for ESO is greater than the value of the evidence of marketing activities for BBC?**
>
>**A: No.**

(Tr. at 18-19) (emphasis supplied) (objections omitted).

Rockport thus cannot satisfy an essential element of its contract claim. Because Rockport failed to produce <u>any</u> evidence of "reasonably specific damages" on its theory of lost marketing value and ESO has paid all royalties due under the plain terms of the Agreement, Rockport will not be able to prevail at trial, and summary judgment should be granted to ESO. See <u>Kiely</u>, 914 F. Supp. at 714.

## **CONCLUSION**

For the above stated reasons, ESO requests that summary judgment be entered against Rockport.

Date: October 12, 2005                    Respectfully submitted,

ESO

by its attorneys,

_____/s/ James J. Foster_____
James J. Foster, Esq., BBO # 553285
jfoster@wolfgreenfield.com
Laura Topper, Esq., BBO # 652364
ltopper@wolfgreenfield.com
Adam J. Kessel, Esq., BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
Fax: (617) 646-8646