IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>E.S. ORIGINALS, INC.<br><br>　　　　　　Defendant. | CIVIL ACTION NO. 04-12714-WGY |

**DECLARATION OF LAURA TOPPER IN SUPPORT
OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

I declare, under the pains and penalties of perjury:

1.　　I am an attorney representing E.S. Originals, Inc. in connection with this matter.

2.　　The attached Exhibit A is the initial disclosures of The Rockport Company, LLC, as served on March 31, 2005 and Supplemented on August 31, 2005.

3.　　The attached Exhibit B is a transcript of the Deposition of The Rockport Company, LLC through John Livingston (exhibits excluded).

4.　　The attached Exhibit C is a stipulation signed by the parties.

Date:  October 12, 2005　　　　　　　　　　　　/s/Laura Topper

945691.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br>　　　　　Plaintiff,<br><br>v.<br><br>E. S. ORIGINALS, INC.,<br>　　　　　Defendant. | )<br>)<br>)<br>)　　C.A. No. 04-12714 WGY<br>)<br>)<br>)<br>)<br>) |

## THE ROCKPORT COMPANY, LLC'S AUTOMATIC DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 26(a)(1), The Rockport Company, LLC ("Rockport"), hereby submits this Automatic Disclosure Statement.

**A.　Individuals likely to have discoverable information that Rockport may use to support its claims or defenses**

Martha Blue
The Rockport Company, LLC
1895 J.W. Foster Boulevard
Canton, MA
781-401-4000

　　Ms. Blue likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

Sharon Bryan
The Rockport Company, LLC
1895 J.W. Foster Boulevard
Canton, MA
781-401-4000

　　Ms. Bryan likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

00900275

Richard Paterno
The Rockport Company, LLC
1895 J.W. Foster Boulevard
Canton, MA
781-401-4000

  Mr. Paterno likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

John Frascotti
The Rockport Company, LLC
1895 J.W. Foster Boulevard
Canton, MA
781-401-4000

  Mr. Frascotti likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

Morris Shalom
E.S. Originals, Inc.
450 West 33rd Street
New York, NY  10001
Telephone unknown

  Mr. Shalom likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

Eddie Esses
E.S. Originals, Inc.
450 West 33rd Street
New York, NY  10001
Telephone unknown

  Mr. Esses likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

Eddie Anteby
E.S. Originals, Inc.
450 West 33rd Street
New York, NY  10001
Telephone unknown

Mr. Anteby likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

Mark Challant
E.S. Originals, Inc.
450 West 33rd Street
New York, NY 10001
Telephone unknown

Mr. Challant likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

David Murphy
Address and telephone unknown

Mr. Murphy likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

David Helter
Address and telephone unknown

Mr. Helter likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc.

Mr. Alans
Address and telephone unknown

Mr. Alans likely has discoverable information related to sales by E.S. Originals, Inc. after the License Agreement was terminated.


Rockport reserves the right to supplement the list of individuals who are likely to have discoverable information relevant to this litigation, whenever and if any such individuals become known to Rockport.

B. **Documents in Rockport's possession, custody or control that it may use to support its claims or defenses**

1. License Agreement and Amendments between Rockport and E.S. Originals, Inc.

2. Correspondence between representatives of Rockport and representatives of E.S. Originals, Inc.

3. License Agreement between Rockport and BBC International LLC.

Rockport reserves the right to supplement the list of documents relevant to this litigation, whenever and if any such documents become known to Rockport.

C. **Computation of Damages**

Rockport is unable at this time to provide a computation of its damages with respect to its claims, but will engage an expert to determine the extent of those damages. Rockport will supplement this section of its Automatic Disclosure Statement once the expert has made its determination.

D. **Insurance Policies**

The Plaintiff is not aware of any insurance policy under which any insurance carrier may be liable to satisfy any judgment or any part thereof that might be entered in this action.

Respectfully submitted,

THE ROCKPORT COMPANY, LLC
By its attorneys,

*/s/ Victoria L. Walton*
Shepard Davidson, Esq. (BBO #557082)
Victoria L. Walton, Esq. (BBO #650999)
BURNS & LEVINSON LLP
125 Summer Street
Boston, Massachusetts 02110
(617) 345-3000

Dated: March 31, 2005

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC,<br>    Plaintiff,<br><br>v.<br><br>E. S. ORIGINALS, INC.,<br>    Defendant. | C.A. No. 04-12714 WGY |

## THE ROCKPORT COMPANY, LLC'S SUPPPLEMENTAL AUTOMATIC DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 26(a)(1), The Rockport Company, LLC ("Rockport"), hereby submits this Supplemental Automatic Disclosure Statement.

**A.  Individuals likely to have discoverable information that Rockport may use to support its claims or defenses**

Martha Blue
The Rockport Company, LLC
1895 J.W. Foster Boulevard
Canton, MA
781-401-4000

    Rockport no longer believes that Ms. Blue likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc. that Rockport may use to support its claims or defenses.

John Frascotti
The Rockport Company, LLC
1895 J.W. Foster Boulevard
Canton, MA
781-401-4000

    Rockport no longer believes that Mr. Frascotti likely has discoverable information related to the License Agreement between Rockport and E.S. Originals, Inc. and Rockport's dealings and relationship with E.S. Originals, Inc. that Rockport may use to support its claims or defenses.

00952863

**B. Documents in Rockport's possession, custody or control that it may use to support its claims or defenses**

    4.    The redacted page of the October 2003 calendar of Richard Paterno.

Rockport reserves the right to supplement the list of documents relevant to this litigation, whenever and if any such documents become known to Rockport.

Respectfully submitted,

THE ROCKPORT COMPANY, LLC
By its attorneys,

*/s/ Shepard Davidson/*

Shepard Davidson, Esq. (BBO #557082)
Victoria L. Walton, Esq. (BBO #650999)
BURNS & LEVINSON LLP
125 Summer Street
Boston, Massachusetts 02110
(617) 345-3000

Dated: August 31, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 8/31/05.

00952863

# EXHIBIT B

1

VOLUME:    I
PAGES:     1-28
EXHIBITS:  See Index

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 04-12714-WGY

```
                              x
THE ROCKPORT COMPANY, LLC     x
         Plaintiff            x
                              x
     vs.                      x
                              x
E.S. ORIGINALS,               x
         Defendant            x
                              x
```

DEPOSITION of JOHN LIVINGSTON, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Jill Kourafas, Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts held at the Law Offices of Wolf Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, Massachusetts, Wednesday, August 31, 2005, commencing at 10:50 a.m.

REPORTERS, INC.
GENERAL & TECHNICAL COURT REPORTING
23 MERRYMOUNT ROAD, QUINCY, MA 02169
617.786.7783/FACSIMILE 617.786.7723

---

2

APPEARANCES OF COUNSEL:

For the Plaintiff:
   BURNS & LEVINSON, LLP
   (BY:  SHEPARD DAVIDSON, ESQ.)
   125 Summer Street
   Boston, Massachusetts 02110

For the Defendant:
   WOLF, GREENFIELD & SACKS, P.C.
   (BY:  JAMES J. FOSTER, ESQ.)
   (LAURA TOPPER, ESQ.)
   600 Atlantic Avenue
   Boston, Massachusetts 02210

---

3

INDEX

Testimony of:                          Page

JOHN LIVINGSTON
Examination by Mr. Foster               4


INDEX OF EXHIBITS

Exhibits    Description                Page

   1     The Rockport Company
         LLC's Automatic Disclosure
         Statement                      4

   2     Letter dated 9/3/04           17

---

4

1                P R O C E E D I N G S

2

3             MR. FOSTER:  For the record,

4    Mr. Davidson, I understand this witness is

5    testifying as to Categories 8 and 9 of the

6    notice, is that right?

7             MR. DAVIDSON:  That's correct,

8    except on 8 he is not testifying as to the

9    interrogatory answers.  That was Mr. Paterno.

10            MR. FOSTER:  All right.  He is

11   testifying under the Rule 26A disclosures; is

12   that right?

13            MR. DAVIDSON:  Right.

14

15            *(Livingston Exhibit No. 1, The*

16            *Rockport Company LLC's Automatic*

17            *Disclosure Statement, marked.)*

18

19            **JOHN LIVINGSTON**, having been first

20   duly sworn, testifies as follows:

21

22   **EXAMINATION BY MR. FOSTER:**

23 Q.   Mr. Livingston, before I get into the

24      substance, let me ask you what is your

Page 5

| | | |
|---|---|---|
| 1 | | position with Rockport? |
| 2 | A. | **I'm counsel to Reebok, Rockport's parent** |
| 3 | | **company.** |
| 4 | Q. | How long have you held that position? |
| 5 | A. | **Since August of 2002.** |
| 6 | Q. | And how long has Rockport been a subsidiary |
| 7 | | of Reebok? |
| 8 | A. | **I don't recall the date. Certainly before I** |
| 9 | | **joined the company.** |
| 10 | Q. | Okay. And were you personally involved in |
| 11 | | the negotiations of the trademark license |
| 12 | | agreement with ESO? |
| 13 | A. | **No.** |
| 14 | Q. | Did you review it prior to its being signed? |
| 15 | A. | **No.** |
| 16 | Q. | Were you aware of it at the time? |
| 17 | A. | **No.** |
| 18 | Q. | All right. How many trademark license |
| 19 | | agreements does Reebok have with other |
| 20 | | companies, Reebok or your subsidiaries? |
| 21 | A. | **I don't know.** |
| 22 | Q. | More than ten? |
| 23 | A. | **Reebok, including all of its subsidiaries?** |
| 24 | Q. | Yes. |

Page 6

| | | |
|---|---|---|
| 1 | A. | **I don't know for certain. I would assume,** |
| 2 | | **yes, but I don't know for certain.** |
| 3 | Q. | All right. In negotiating those agreements, |
| 4 | | do you work from a standard form, does Reebok |
| 5 | | and its subs work from a standard form? |
| 6 | A. | **I can only speak to Rockport and, yes, to the** |
| 7 | | **extent I have worked on license agreements** |
| 8 | | **for Rockport, I have worked from a standard** |
| 9 | | **form.** |
| 10 | Q. | Okay. Let me show you Livingston 1, which is |
| 11 | | the Automatic Disclosure Statement that you |
| 12 | | have been designated to testify about. |
| 13 | A. | **(Witness reviews document.)** |
| 14 | Q. | When you feel comfortable doing so, you can |
| 15 | | turn to Page 3. |
| 16 | A. | **(Witness complies.)** |
| 17 | Q. | Page 3 there's a heading called "Mr. Alans"? |
| 18 | A. | **I see it.** |
| 19 | Q. | And do you know who this Mr. Alans person is? |
| 20 | A. | **I do not.** |
| 21 | Q. | Do you know what information he has relative |
| 22 | | to this case? |
| 23 | A. | **I do not.** |
| 24 | Q. | Do you know his address and telephone? |

Page 7

| | | |
|---|---|---|
| 1 | A. | **I do not.** |
| 2 | Q. | All right. Turn to Page 4? |
| 3 | A. | **(Witness complies.)** |
| 4 | Q. | Computation of damages, you're also |
| 5 | | designated to testify on that subject, |
| 6 | | Paragraph 9, it says here that "Reebok will |
| 7 | | engage an expert to determine the extent of |
| 8 | | the damages with respect to its claim." Did |
| 9 | | Rockport, in fact, engage an expert? |
| 10 | A. | **No.** |
| 11 | Q. | Are you aware that the deadline for an expert |
| 12 | | report has passed in this lawsuit? |
| 13 | A. | **I'm not aware one way or the other.** |
| 14 | Q. | Is Rockport at this time able to provide a |
| 15 | | computation of its damages with respect to |
| 16 | | its claims? |
| 17 | A. | **A computation, no.** |
| 18 | Q. | Does Rockport have any damages? |
| 19 | A. | **Yes, I believe so.** |
| 20 | Q. | Would you tell me what they are? |
| 21 | A. | **The damages in this case would be the** |
| 22 | | **difference between the value to Rockport of** |
| 23 | | **the license agreement with the ESO and the** |
| 24 | | **value to Rockport of the license agreement** |

Page 8

| | | |
|---|---|---|
| 1 | | **with BBC.** |
| 2 | Q. | Can you tell me what the value of the license |
| 3 | | agreement with ESO is? |
| 4 | A. | **I can tell you that there are -- I would say** |
| 5 | | **two components of the value of the license** |
| 6 | | **agreement with ESO, one is the value of the** |
| 7 | | **marketing activities that ESO was supposed to** |
| 8 | | **have performed under the license agreement,** |
| 9 | | **and the other would be the value of the** |
| 10 | | **royalty payments that ESO was supposed to** |
| 11 | | **have made to Rockport under the license** |
| 12 | | **agreement.** |
| 13 | Q. | What is the value of the royalty payments? |
| 14 | A. | **The value of the royalty payments is whatever** |
| 15 | | **it says in the contract.** |
| 16 | | I believe that the contract includes |
| 17 | | guaranteed minimum royalties and I believe |
| 18 | | for the third contract year, the guaranteed |
| 19 | | royalties are $1,350,000. |
| 20 | Q. | All right. Do you know what the actual sales |
| 21 | | were of products under the trademark license |
| 22 | | agreement during the first contract year? |
| 23 | A. | **I'm sorry, under which trademark license** |
| 24 | | **agreement?** |

**Page 9**

1  Q.  ESO agreement.
2  A.  **I do not know.**
3  Q.  Do you know what they were during any part of
4      the second contract year?
5  A.  **I don't know.**
6  Q.  Does Rockport have any evidence that the
7      sales under the trademark license agreement
8      during the third contract year, had there not
9      been a breach, would have exceeded the
10     minimum set forth in the contract?
11         MR. DAVIDSON: Objection.
12 A.  **I don't know whether Rockport would have any**
13     **such evidence.**
14 Q.  Is it your contention that but for the breach
15     the sales would've been at a level which
16     would have merited royalty payments in excess
17     of the minimum?
18         MR. DAVIDSON: Objection.
19 A.  **I don't know what our contention is in that**
20     **regard.**
21         MR. DAVIDSON: The answer is "no."
22         To save everybody a lot of time, so
23     I don't have to write you a letter
24     stipulating to that.

**Page 10**

1        MR. FOSTER: All right.
2        MR. DAVIDSON: That's fine. You're
3    doing what you are supposed to do.
4        MR. FOSTER: Let me make sure I got
5    this clear, can you just put on the record
6    what Rockport's position is on that point?
7        MR. DAVIDSON: Now you're going to
8    make me recite what your point is?
9        MR. FOSTER: I'm happy to I'm happy
10   to recite and you say "yes" or "no." We can
11   do it that way.
12       MR. DAVIDSON: Yeah, why don't we do
13   that.
14       MR. FOSTER: It is my understanding,
15   subject to confirmation by Mr. Davidson, that
16   Rockport is not going to contend that, but
17   for the breach, sales would have been in
18   excess of the amount which would have -- let
19   me start over again.
20       MR. DAVIDSON: It's not as easy as
21   you thought.
22       MR. FOSTER: There is a provision --
23   let me start again. My understanding -- as
24   the witness testified, the contract had a

**Page 11**

1    provision providing for minimum royalties of
2    $1.35 million during the third contract year.
3    The contract provided that if sales were in
4    excess of a certain number, the royalties
5    obviously would exceed that amount.
6        It is my understanding that, as
7    Mr. Davidson will hopefully confirm, that
8    Rockport is not going to contend in this
9    lawsuit that sales would've been at such a
10   level that the royalties would be paid during
11   the third contract year would have been
12   greater than the minimum royalties of
13   $1,350,000.
14       MR. DAVIDSON: Subject to my review
15   of the transcript, that is correct.
16       MR. FOSTER: Okay.
17       MR. DAVIDSON: Off the record.
18       *(Discussion off the record.)*
19 Q.  Back on the record. Mr. Livingston, you said
20     there was another component that there were
21     some value in the marketing activity of ESO;
22     what is or was that value?
23 A.  **We're not able to quantify that value at this**
24     **time.**

**Page 12**

1  Q.  When do you expect you'll be able to quantify
2      it?
3  A.  **I don't know.**
4  Q.  Well, we have a discovery deadline coming up
5      pretty soon, do you anticipate quantifying it
6      before that deadline expires?
7  A.  **I don't know.**
8  Q.  Okay. Now, you testified earlier that the
9      damages would be measured subject to -- my
10     recollection may be off, but something -- the
11     difference in value between one license
12     agreement and the other, can you tell me how
13     you would value the license agreement with
14     BBC?
15 A.  **Yes.**
16 Q.  Go ahead.
17 A.  **I would value it generally the same way as I**
18     **would value a license agreement with ESO,**
19     **that is to say, there would be two general**
20     **categories of value, one would be the value**
21     **of the marketing of the Rockport brand under**
22     **the contract, and the other would be the**
23     **royalty stream received from BBC under the**
24     **contract.**

13

| | | |
|---|---|---|
| 1 | Q. | When did BBC start its marketing activities |
| 2 | | for Rockport? |
| 3 | A. | **I don't know.** |
| 4 | Q. | Let me put in front you, I think it is |
| 5 | | Exhibit 6 from the Paterno deposition, which |
| 6 | | has an agreement date of December 4, 2003 and |
| 7 | | ask if that aids you in recalling when BBC |
| 8 | | started its activities, its marketing |
| 9 | | activities for Rockport? |
| 10 | | MR. DAVIDSON: Objection. |
| 11 | A. | **No, the contract doesn't tell me when BBC** |
| 12 | | **started its marketing activities.** |
| 13 | Q. | Let me put in front of you Byran Exhibit 1, |
| 14 | | which contains royalty reports for the two |
| 15 | | months of 2004, and ask you if that aids you |
| 16 | | in recalling when BBC began its marketing |
| 17 | | activities for Rockport? |
| 18 | | MR. DAVIDSON: Objection. |
| 19 | A. | **Again, it doesn't specifically tell me when** |
| 20 | | **they began their marketing activities. All** |
| 21 | | **this tells me is that -- a general period of** |
| 22 | | **three months over which BBC reported sales of** |
| 23 | | **product.** |
| 24 | Q. | All right. If they were selling a product, |

14

| | | |
|---|---|---|
| 1 | | they were marketing it, right? |
| 2 | | MR. DAVIDSON: Objection. |
| 3 | A. | **I would assume so.** |
| 4 | Q. | All right. Can you tell me what the |
| 5 | | difference is -- you testified with respect |
| 6 | | to both license agreements that there was a |
| 7 | | component in valuing the agreement, a |
| 8 | | component with respect to marketing |
| 9 | | activities; can you tell me what, if any, was |
| 10 | | the difference in value between the marketing |
| 11 | | activities of BBC versus that of ESO? |
| 12 | A. | **I don't know.** |
| 13 | Q. | Do you have any evidence that there was any |
| 14 | | difference at all? |
| 15 | A. | **I don't have any evidence one way or the** |
| 16 | | **other.** |
| 17 | Q. | All right. Do you have any evidence one way |
| 18 | | or the other whether licensed sales of |
| 19 | | Rockport product after June 30, 2005, will be |
| 20 | | higher or lower because of transfer of |
| 21 | | responsibilities from ESO to BBC? |
| 22 | A. | **Can you repeat the question, please?** |
| 23 | | MR. FOSTER: Why don't you read it |
| 24 | | back. I'll screw it up. |

15

| | | |
|---|---|---|
| 1 | | |
| 2 | | THE REPORTER: "QUESTION: All |
| 3 | | right. Do you have any evidence one way or |
| 4 | | the other whether licensed sales of Rockport |
| 5 | | product after June 30, 2005, will be higher |
| 6 | | or lower because of transfer of |
| 7 | | responsibilities from ESO to BBC?" |
| 8 | | |
| 9 | A. | *(In answer to the above-read question.)* |
| 10 | | **I don't have any such evidence.** |
| 11 | Q. | All right. Well, then to sum up, the damages |
| 12 | | that Rockport is seeking in this lawsuit, am |
| 13 | | I correct, is the amount of the minimum |
| 14 | | royalties set forth in the ESO agreement of |
| 15 | | $1,350,000 minus the amount of royalties that |
| 16 | | BBC pays to Rockport for the period ending |
| 17 | | June 30, 2005? |
| 18 | A. | **That's certainly one component of the damages** |
| 19 | | **that Rockport would be seeking.** |
| 20 | Q. | Can you recite for me the other components? |
| 21 | A. | **As I testified earlier, the other component** |
| 22 | | **of our damages is the value of the marketing** |
| 23 | | **of the Rockport brand under the respective** |
| 24 | | **contracts.** |

16

| | | |
|---|---|---|
| 1 | Q. | Right. And what is the evidence of the |
| 2 | | difference in value caused by the breach; do |
| 3 | | you have any such evidence? |
| 4 | A. | **Not at this time, no.** |
| 5 | Q. | All right. The previous witness I tried to |
| 6 | | find out the total amount of royalties that |
| 7 | | have been paid by BBC to Rockport for the |
| 8 | | period ending June 30, 2005. Let me make a |
| 9 | | similar attempt with you. |
| 10 | | First of all, do you know whether |
| 11 | | BBC has paid -- made royalty payment for the |
| 12 | | second quarter of 2005 as yet? |
| 13 | A. | **I do not know.** |
| 14 | Q. | I guess you don't happen to know what the |
| 15 | | amount is? |
| 16 | | MR. DAVIDSON: Objection. |
| 17 | A. | **Yeah, I don't know whether they have or** |
| 18 | | **haven't, so I don't know what the amount** |
| 19 | | **would or wouldn't be.** |
| 20 | Q. | Do you know what the amount of the royalty |
| 21 | | payment was as to that quarter which no |
| 22 | | document was provided that Ms. Byran |
| 23 | | testified about, the second quarter of 2004? |
| 24 | | MR. DAVIDSON: Objection. |

17

1  A.  I don't know.
2  Q.  Do you know whether or not Rockport has that
3       information in its possession?
4  A.  I don't know.
5  Q.  Is it your belief that they do?
6  A.  I honestly don't know.
7  Q.  If BBC made a quarterly payment for the
8       second quarter of 2004 and Rockport didn't
9       have any record of it, wouldn't that concern
10      you as corporate counsel?
11          MR. DAVIDSON:  Objection.
12 A.  Yes.
13          MR. FOSTER:  I just want to state
14      for the record we have noticed the deposition
15      of BBC, and I guess we'll get the information
16      there, but obviously, this gap has to be
17      filled in at some point, and I don't want to
18      hector this witness on this subject.
19          All right.  Let's mark as the next
20      Livingston exhibit a letter dated
21      September 3, 2004.
22
23      **(Livingston Exhibit No. 2, Letter**
24      **dated 9/3/04, marked.)**

18

1  Q.  Have you seen Exhibit 2 before?
2  A.  **(Witness reviews document.)**
3       **I believe so, yes.**
4  Q.  If you turn to the second page, did you
5       review a draft of this document before it was
6       sent?
7  A.  **I believe so.**
8  Q.  The second page, Mr. Davidson says that "At a
9       minimum Rockport's damages amount to the four
10      minimum royalty payments."  It goes on to say
11      "While Rockport may well have other damages,"
12      do you have any evidence of other damages?
13          MR. DAVIDSON:  Objection.  Other
14      than what he already testified to?
15 A.  **Other than what I've already testified to,**
16      **no, I don't believe so.**
17 Q.  Well, according to my notes, you testified to
18      a potential difference in marketing value
19      between two licenses.  But I thought I asked
20      you if you had any evidence of what the
21      difference was, higher or lower, and I
22      thought you testified that you had no
23      evidence, so you say "other than what I
24      testified to," I want to pursue that on this

19

1       record.
2           What did you testify or what are you
3       currently going to testify to as to evidence
4       of other damages?
5           MR. DAVIDSON:  Objection.
6  A.  **Again, I believe I stated before there were**
7       **two components, principal components, of this**
8       **case; one being the difference between the**
9       **royalty payments on the license agreement,**
10      **but the other being the difference between**
11      **the value of the marketing activities under**
12      **the respective license agreements, and I also**
13      **believe I testified that I did not at this**
14      **time have any evidence that would quantify**
15      **the latter portion of those damages.**
16 Q.  I'm going to pursue that.
17          Putting the level of quantification
18      aside, do you have any evidence that the
19      value of the marketing activities for ESO is
20      greater than the value of the evidence of
21      marketing activities for BBC?
22          MR. DAVIDSON:  Objection.
23 A.  **No.**
24 Q.  Now, let's turn to the first sentence of the

20

1       top of the second page where it says, "At a
2       minimum, Rockport's damages amount in the sum
3       of ..." is it your position, or is it --
4       well, is it Rockport's position,
5       Mr. Livingston, that ESO is not entitled to
6       an offset in the amount of the royalties that
7       are paid by BBC for that third contract year?
8           MR. DAVIDSON:  Objection.
9  A.  **I'm sorry, can you repeat the question?**
10          MR. DAVIDSON:  I think you made it
11      sort of a double negative.
12 Q.  I'll rephrase it.
13          The unpaid minimum guaranteed
14      royalty payments specified here would amount
15      to $1,350,000, right?
16          MR. DAVIDSON:  Objection.
17 A.  **It's whatever -- whatever four times the**
18      **three thirty-seven five is, but I'm not a**
19      **mathematician.**
20 Q.  What is Rockport's position as to whether ESO
21      is entitled to deduct from that amount the
22      royalties paid to Rockport by BBC for sales
23      prior to June 30, 2005?
24 A.  **I think you're asking me to state a legal**

Page 21

1  conclusion.
2  Q.  You're uncomfortable doing that?
3      MR. DAVIDSON: It's not what he's
4  here to do.
5  A.  **Yeah, I mean, I'm not -- I am not**
6      **uncomfortable doing that.**
7  Q.  Okay. Well, you have been designated to
8      testify to Rockport's damages resulting from
9      ESO's breach of license agreement.
10     MR. DAVIDSON: He's done that.
11     You're asking about a demand that
12  was made before the lawsuit was filed.
13     MR. FOSTER: And I'm asking you if
14  the damages, is it not the fact that if there
15  are damages from the breach, the damages
16  would be reduced by the amount of royalties
17  paid by BBC for that same period?
18     MR. DAVIDSON: Objection.
19 A.  **I believe I testified that a component of the**
20     **damages was the difference between the value**
21     **of the royalty streams under the ESO license**
22     **and the value of the royalty streams under**
23     **the BBC license.**
24 Q.  It sounds like a "yes" to me.

Page 22

1      MR. DAVIDSON: Objection. That's
2   not a question.
3  Q.  Is your answer "yes"?
4  A.  **My answer is what my answer is.**
5  Q.  Is your answer equivalent of a "yes"?
6      MR. DAVIDSON: Objection.
7  A.  **I'm not going to characterize my answer.**
8  Q.  Can you answer the question "yes" or "no"
9      then?
10     MR. DAVIDSON: Objection.
11 A.  **(Pause.)**
12     Yes.
13 Q.  If you look at Paterno Exhibit 3, which is
14     the ESO license agreement, when did you first
15     see this agreement?
16 A.  **I don't recall.**
17 Q.  Was it before or after this lawsuit was
18     brought?
19 A.  **Before.**
20 Q.  Was it before or after October 1, 2003?
21 A.  **I believe it was before.**
22 Q.  Turn to Paragraph 15 of that agreement on
23     Page 7.
24 A.  **Okay.**

Page 23

1  Q.  You're familiar with that clause, right?
2  A.  **Yes.**
3  Q.  And are there similar clauses in other
4      license agreements that Rockport or Reebok
5      subsidiaries have with trademark licenses?
6      MR. DAVIDSON: What topic does this
7  relate to, Jim?
8      MR. FOSTER: 9.
9      MR. DAVIDSON: How does it relate to
10 9? I don't see any connection to 9 and I
11 don't want in-house counsel to be talking
12 about the business of the company if it's not
13 related to the damages.
14     MR. FOSTER: My understanding is,
15 Mr. Davidson -- I don't want to have a
16 colloquy, but I will honor you as a courtesy
17 -- I will say my understanding is that the
18 witness's testimony is that damages here
19 include royalties for the third contract
20 year.
21     MR. DAVIDSON: Well, he didn't say
22 anything about that.
23     He said what the damages were, so I
24 don't see how this relates to what other

Page 24

1  contracts the company might have.
2      MR. FOSTER: Well, it's limited, my
3  courtesy, are you going to instruct the
4  witness not to answer?
5      MR. DAVIDSON: I don't understand
6  how it can be relevant, and I'm concerned,
7  unless you can articulate for me how
8  it's relevant, having in-house counsel
9  testify as to what other agreements the
10 company has.
11     MR. FOSTER: Either the witness
12 answers or you're going to instruct him not
13 to answer.
14     MR. DAVIDSON: Can I have the
15 question back, please?
16
17     THE REPORTER: "QUESTION: And are
18 there similar clauses in other license
19 agreements that Rockport or Reebok
20 subsidiaries have with trademark licenses?"
21
22     MR. DAVIDSON: I'll object to the
23 form. You can answer that question "yes" or
24 "no" to the extent you're capable of doing

**Page 25**

1    that.
2  A.  **I believe so, but I don't know specifically**
3      **how many or which agreements.**
4  Q.  In this case, ESO did pay the guaranteed
5      minimum royalties through the end of the
6      second contract year; is that right?
7  A.  **I don't know.**
8          MR. FOSTER: Give me a minute.
9          (Pause.)
10         Mr. Davidson, Rockport, in its
11   wisdom, designated Mr. Paterno to testify to
12   Paragraph 5 of Schedule A, which I will read
13   into the record, "The terms of the license
14   agreement (including any amendments)
15   including the meaning of such terms and
16   Rockport's expectation with the license
17   agreement."
18         My observation of Mr. Paterno was
19   that he was not prepared to testify on that
20   issue, and that he had no legal training, he
21   seemed unfamiliar with the terms of the
22   agreement, and in response to certain
23   questions, gave fairly long answers, and I
24   object for the record, to providing an

**Page 26**

1    unknowledgeable witness on this issue.
2          Since Mr. Livingston is here, I am
3    going to give you the opportunity to
4    designate him to testify on Category No. 5.
5          MR. DAVIDSON: Category No. 5 is?
6          MR. FOSTER: "The terms of the
7    license agreement (including any amendments)
8    including the meaning of such terms and
9    Rockport's expectations under the license
10   agreement."
11         MR. DAVIDSON: Mr. Livingston is not
12   going to testify on that.
13         I disagree with your
14   characterization of Mr. Paterno's level of
15   preparedness, so if there's something
16   specific that you would like to know, you can
17   submit it to us in an interrogatory or some
18   other form. I think he answered adequately
19   given the general nature of the deposition
20   notice and lack of specificity.
21         MR. FOSTER: Mr. Davidson and I have
22   a disagreement, and it's not my policy to
23   argue on the record. I have no further
24   questions of this witness.

**Page 27**

1          MR. DAVIDSON: Thank you. The
2    deposition is concluded.
3          (Whereupon the deposition was
4    concluded at 11:22 a.m.)

**Page 28**

1    COMMONWEALTH OF MASSACHUSETTS
     MIDDLESEX, ss.
2
3        I, Jill Kourafas, Certified
     Shorthand Reporter and Notary Public duly
4    commissioned and qualified in and for the
     Commonwealth of Massachusetts, do hereby
5    certify that:

6        On the 31st day of August 2005,
     **JOHN LIVINGSTON**, the witness whose deposition
7    is hereinbefore set forth was duly sworn by
     me and identified by me with photo ID, and
8    that the foregoing transcript is a true
     record of the testimony given by such
9    witness, to the best of my knowledge, skill
     and ability.

10       I further certify that I am neither
     attorney nor counsel for, nor related to or
11   employed by, any of the parties to the action
     in which this deposition is taken, and
12   further that I am not a relative or employee
     of any attorney or counsel employed by the
13   parties hereto or financially interested in
     this action.
14
         In Witness Whereof, I have hereunto
15   set my hand and affixed my seal this 4th day
     of September 2005.
16

17       _____
         Notary Public
18       My Commission Expires:
         February 26, 2006
19
20
21   **THE FOREGOING CERTIFICATION OF THIS**
22   **TRANSCRIPT DOES NOT APPLY TO ANY**
     **REPRODUCTION OF THE SAME IN ANY RESPECT**
23   **UNLESS UNDER THE DIRECT CONTROL AND/OR**
     **DIRECTION OF THE CERTIFYING REPORTER.**

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>E. S. ORIGINALS, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 04-12714 WGY |

## STIPULATION

The parties stipulate:

1. The Rockport Company ("Rockport") entered into a license agreement with BBC International LLC ("BBC") effective December 4, 2003, allowing BBC to use certain Rockport trademarks in association with children's footwear ("BBC License").

2. Under the BBC License, BBC has paid to Rockport the following royalty payments for each quarter from the license's effective date to June 30, 2005:

| Time Period | Amount Paid |
|---|---|
| 1/1/04- 3/31/04 | $ 27,581.81 |
| 4/1/04- 6/30/04 | 231,222.36 |
| 7/1/04- 9/30/04 | 44,522.28 |
| 10/1/04- 12/31/04 | 79,317.07 |
| 1/1/05- 3/31/05 | 82,432.22 |
| 4/11/05-6/30/05 | 183,155.30 |
| Total | $648,231.04 |

938017.1

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC<br>By its attorneys,<br><br>*/s/ Victoria L. Walton*<br>Shepard Davidson, BBO #557082<br>Victoria L. Walton, BBO #650999<br>BURNS & LEVINSON LLP<br>125 Summer Street<br>Boston, MA 02110<br>(617) 345-3000 | E.S. ORIGINALS, INC.<br>By its attorneys,<br><br>*/s/ James J. Foster*<br>James J. Foster, BBO #553285<br>Laura Topper, BBO #652364<br>WOLF, GREENFIELD & SACKS, P.C.<br>600 Atlantic Avenue<br>Boston, MA 02210<br>(617) 646-8000 |

Dated: September 23, 2005

938017.1                                    2