UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
THE ROCKPORT COMPANY, LLC,                  )
            Plaintiff,                      )
                                            )
v.                                          )   Civil Action No. 04-12714-WGY
                                            )
E. S. ORIGINALS, INC.,                      )
            Defendant.                      )
_____)

**PLAINTIFF'S OPPOSITION
TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Plaintiff, The Rockport Company, LLC ("Rockport"), hereby opposes Defendant's Renewed Motion for Summary Judgment because defendant, E. S. Originals, Inc. ("ESO"), has not even come close to establishing that it is entitled to summary judgment as a matter of law.

**STATEMENT OF FACTS**

In or about October 2001, Rockport and ESO entered into a license agreement ("License Agreement" or "ESO License Agreement") whereby Rockport granted ESO an exclusive license with respect to certain children's footwear.[1] ESO provided various consideration in exchange for this exclusive license, which included paying royalties (or minimum guaranteed royalties) and committing to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory [i.e., the entire United States] . . .."[2] While Rockport does not contend that the royalty payments were unimportant, the

---

[1] A true copy of the ESO License Agreement is attached to the Affidavit of Richard Paterno ("Paterno Affidavit") as Exhibit A. The Paterno Affidavit was previously filed with the Court in this action on March 30, 2005.
[2] ESO License Agreement, ¶ 18(a).

non-monetary consideration in the License Agreement was more important to Rockport, and it would not have entered into the License Agreement if that consideration was absent.[3]

Even though ESO failed to reach the sales targets set forth in the License Agreement during either of the first two contract years, and had to pay certain minimum guaranteed royalties, ESO never indicated that it was considering repudiating its obligations under the License Agreement.[4]  To the contrary, ESO's conduct and comments to Rockport indicated that ESO was committed to continuing to make its relationship with Rockport a financial success.[5] Accordingly, Rockport was stunned when it was informed by ESO in or about late September of 2003 that it would no longer continue the Rockport business and that ESO was shutting down its Rockport division.[6]

Because having someone take over ESO's obligation to design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products (the "promoting/marketing functions") was so important to Rockport, it immediately tried to find a new licensee.[7]  While Rockport ultimately entered into a new license agreement (the "BBC License Agreement") with BBC International, LLC ("BBC"), the financial terms of the BBC License Agreement are not as favorable to Rockport as were the terms of the ESO License Agreement.[8]  For instance, the minimum guaranteed royalties to which Rockport would have been entitled under the final year of the ESO License Agreement was $1,350,000, while under

---

[3] Paterno Affidavit, ¶ 5.
[4] Paterno Affidavit, ¶ 6.
[5] Paterno Affidavit, ¶ 6; Affidavit of Martha Blue ("Blue Affidavit"), ¶¶ 4-5.  The Blue Affidavit was previously filed with the Court in this action on March 30, 2005.
[6] Paterno Affidavit, ¶¶ 7-8; Blue Affidavit, ¶¶ 6-7.
[7] Paterno Affidavit, ¶ 9; Blue Affidavit, ¶ 8.
[8] Paterno Affidavit, ¶ 10; BBC License Agreement, a true copy of which is attached to the Paterno Affidavit as Exhibit B, ¶ 12 & Exh. F; ESO License Agreement, ¶ 12 & Exh. D.

the BBC License Agreement, the minimum guaranteed royalties amount to approximately $187,500 over that same period of time.[9]

While Rockport did send a letter to ESO in January of 2004 that formally terminated the License Agreement ("Termination Letter"), Rockport never waived any right it had to damages as a result of ESO's contract breaches or otherwise.[10]  To the contrary, in the Termination Letter Rockport expressly "reserve[d] all its rights under the [License] Agreement and otherwise."[11]

## ARGUMENT

### I.  ESO's Motion Should Be Denied For Failing To Comply With Local Rule 7.1

Local Rule 7.1(2) mandates that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  In this case, while ESO's Motion asserts that "ESO's counsel has conferred with opposing counsel in a good faith effort to resolve or narrow the issues presented by this motion," that statement simply is not true.

On the date ESO's Motion was filed, ESO's counsel called Rockport's counsel and stated that he was filing this Motion on behalf of ESO and he assumed Rockport would not agree to dismiss the case.[12]  Rockport's counsel confirmed that Rockport would not agree and also asked what were the grounds for the motion, pursuant to counsels' obligation to try to narrow the issues under Local Rule 7.1.[13]  ESO's counsel stated that the Motion involved the same grounds as their prior Motion for Summary Judgment but they had updated it with evidence from the

---

[9]   BBC License Agreement, ¶ 12 & Exh. F; ESO License Agreement, ¶ 12 & Exh. D.
[10]  Termination Letter, a true copy of which is attached to the Paterno Affidavit as Exhibit C.
[11]  Termination Letter.
[12]  Affidavit of Victoria L. Walton ("Walton Affidavit") filed herewith, ¶ 2.
[13]  Walton Affidavit ¶ 3.

depositions.[14] When Rockport's counsel tried to discuss it more substantively so as to fulfill their obligations under Rule 7.1, ESO's counsel stated that he would "risk the wrath of the Court."[15] Rockport's counsel pointed out that she was simply trying to comply with Rule 7.1, but thereafter, the conversation terminated.[16] Thus, ESO's counsel never truly attempted to confer "in good faith to resolve or narrow the issues presented" in its Motion.

The District Court of New Hampshire addressed an almost identical situation under its Local Rule 7.1(c) in In re Tyco Int'l Ltd. Securities Litigation, MDL No. 00-MD-1335-B, 2001 U.S. Dist. LEXIS 819 (D.N.H. 2001).[17] In that case, the defendant sent a fax at noon, demanding assent to a motion by 2:00 P.M. Id., at *2-3. Despite a responsive fax by plaintiffs at two o'clock indicating a willingness to meet and confer, the defendants filed the motion later that afternoon without speaking to plaintiffs' counsel. Id., at *3. In light of these facts, the district court held that "defense counsel certainly could not [legitimately] certify that they had made a 'good faith' attempt at concurrence." Id. Accordingly, the defendants' motion was denied as a sanction for failing to comply with the local rules. Id., at *4. For the same reasons, ESO's ultimatum related to its Motion and its counsel's refusal to engage in any discussion over the issues raised in the Motion constitutes a violation of this Court's Local Rule 7.1 and compels denial of that Motion.[18]

---

[14] Walton Affidavit ¶ 4.
[15] Walton Affidavit ¶ 5.
[16] Walton Affidavit ¶ 6.
[17] Local Rule 7.1(c) for the U.S. District Court for the District of New Hampshire provides: "Any party filing a motion other than a dispositive motion shall certify to the court that a good faith attempt has been made to obtain concurrence in the relief sought."
[18] To the extent that ESO belatedly contends that its noncompliance should be excused because "nothing would have changed" had it complied with Rule 7.1, any such contention is immaterial (even if true, and Rockport does not concede this). Rule 7.1 does not allow the moving party to avoid engaging in the requisite conference if it subjectively believes that no progress would be made – nor should such an exception be endorsed by the Court, as this plainly would result in the Rule rapidly becoming ineffective, if not completely obsolete.

## II.  ESO's Motion Should Be Denied On The Merits

### A.  ESO Breached The License Agreement, Breached The Covenant Of Good Faith And Fair Dealing And Caused Rockport To Suffer $701,768.96 In Damages

As this Court is well aware, summary judgment should not be granted unless there are no material facts in dispute and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). In this case, however, what is established by the undisputed facts is that ESO breached the License Agreement, breached the covenant of good faith and fair dealing and caused Rockport to incur $701,768.96 in damages.

ESO does not dispute that Rockport would not even have entered into the License Agreement absent ESO's express obligation to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products . . .." Paterno Affidavit, ¶ 5. ESO also concedes that it had no ability to terminate the License Agreement or refuse to fulfill its obligations thereunder. ESO's Summary Judgment Memorandum at 2; Transcript of First ESO Rule 30(b)(6) Deposition ("ESO Tr."), the relevant pages of which are attached to the Affidavit of Shepard Davidson ("Davidson Affidavit"), filed herewith, as Exhibit A, at 89-90, 93. Nevertheless, ESO did cease fulfilling its marketing, promotional and other contractual obligations in early October, 2003 – well before Rockport sent its Termination Letter in January of 2004. ESO Tr. at 92-93, 98, 101-105, 119; Severance Agreements, copies of which are attached to the Davidson Affidavit as Exhibit B; Termination Letter. ***Therefore, as a matter of law, ESO materially breached the License Agreement and violated the covenant of good faith and fair dealing.*** See Lease-It, Inc. v. Mass. Port Auth., 33 Mass. App. Ct. 391, 396, 600 N.E. 2d 599, 602 (1992) ("A material breach of an agreement occurs when there is a breach of

'an essential and inducing feature of the contract.'") (quoting Bucholz v. Green Bros., 272 Mass. 49, 52 (1930)); Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir. 1936) (holding that neither party should do anything to injure or destroy the right of the other party to receive the fruits of the contract); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72, 583 N.E.2d 806, 820 (1991) (affirming a ruling that one party's action destroyed or injured the other party's right to receive the fruits of the contract and thus violated the implied covenant of good faith and fair dealing).

As the victim of ESO's breaches, Rockport was *entitled* to a remedy that would put it in as good a position as it would have been in had ESO not breached. In re Carvalho, 335 F.3d 45, 51 (1st Cir. 2003) ("The root purpose of a contract remedy is 'to place the plaintiff-promisee in as good a position as [it] would have occupied had the defendant-promisor not breached the contract …'") (quoting 24 Richard A. Lord, Williston on Contracts, § 64:1, at 7 (4th ed. 2002)). In addition to this entitlement, Rockport was *obligated* to "take reasonable steps to put [itself] in as good a position as [it] would have enjoyed had the contract been fulfilled." Gillentine v. McKeand, 426 F.2d 717, 724 n.24 (1st Cir. 1970). Given the facts of this case, therefore, Rockport was both entitled and obligated to try to find another company to assume ESO's responsibilities under the License Agreement.

While Rockport was able to find another company to fulfill the most important of ESO's obligations, i.e., the promotion/marketing functions, that company, BBC, would not agree to pay nearly the same amount in royalties (or minimum guaranteed royalties) as ESO had been obligated to pay. See Amendment No. 3 to ESO License Agreement; BBC License Agreement ¶ 2(d) & Exh. F. As a result, Rockport has collected $701,768.96 less under the BBC License Agreement than it would have collected had ESO not breached and forced Rockport to seek a

new licensee. See Amendment No. 3 to ESO License Agreement; BBC License Agreement ¶ 2(d) & Exh. F; Stipulation.[19] Thus, this difference in value to Rockport between the ESO License Agreement and the BBC License Agreement constitutes Rockport's damages. Compare McKenna v. Commissioner of Mental Health, 347 Mass. 674, 677, 199 N.E.2d 686, 688 (1964) (wrongfully discharged employee was "entitled to recover his back salary less what he did in fact earn following his discharge . . .").

### B. Paragraph 15 Of The License Agreement Is Not A Limitation On The Damages To Which Rockport Is Entitled

In light of ESO's plain breaches -- which it does not dispute -- and Rockport's manifest damages, ESO has resorted to disingenuously mischaracterizing Rockport's position as a means of seeking summary judgment. Specifically, ESO falsely asserts that through this lawsuit Rockport is trying to "collect royalties beyond the second Contract Year." ESO's Summary Judgment Memorandum at 5. As Rockport plainly sets forth in its Complaint, however, it is claiming that it is entitled to damages because ESO breached the License Agreement and the covenant of good faith and fair dealing by "failing to 'aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory.'" Complaint, ¶¶ 9-15. Moreover, when ESO's counsel asked Rockport's Rule 30(b)(6) designee at deposition to describe those damages, there was no mention of seeking royalties from ESO "beyond the Second Contract Year." Rather, the response was as follows:

> The damages in this case would be the difference between the value to Rockport of the license agreement with ESO and the value to Rockport of the license agreement with BBC.

---

[19] The Stipulation was submitted by ESO as Exhibit C to the Declaration of Laura Topper in Support of Defendant's Renewed Motion for Summary Judgment.

Transcript of Rockport/Livingston Deposition, at 7-8, copies of which were previously filed with the Declaration of Laura Topper in Support of Defendant's Renewed Motion for Summary Judgment.

Accordingly, while ESO may be correct that, pursuant to paragraph 15 of the License Agreement, once Rockport sent the Termination Letter, Rockport no longer had a right to *royalties* beyond the Second Contract Year, ***Rockport is not contending in this suit that it is entitled to royalties from ESO beyond the Second Contract Year***.[20]  As stated above, Rockport simply is contending that it should be entitled to recover the damages that it suffered as a result of ESO's breach of contract and breach of the covenant of good faith and fair dealing.  Thus, ESO has not established that it is entitled to the entry of summary judgment in its favor on the claims that Rockport is pressing.[21]

## CONCLUSION

By reason of the foregoing, Rockport respectfully suggests that ESO has fallen well short of establishing that it is entitled to summary judgment as a matter of law, and its Motion therefore should be denied.

---

[20] Rockport will not even address Section B of ESO's Summary Judgment Memorandum, as Rockport also is not seeking the damages described in that section.  Indeed, Rockport would have made this clear in a Rule 7.1 Conference if one had taken place.

[21] In fact, it is Rockport that is entitled to summary judgment, and the only reason that Rockport has not moved for summary judgment is that the parties are scheduled to engage in mediation on October 31, 2005, and it did not want to expend the time and money to file such a motion if a settlement is reached on that day.

Respectfully submitted,

**THE ROCKPORT COMPANY, LLC**
By its attorneys


/s/ Victoria L. Walton
Shepard Davidson, Esq. (BBO#557082)
sdavidson@burnslev.com
Victoria L. Walton, Esq. (BBO #650999)
vwalton@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000 (phone)
(617) 345-3299 (fax)

Dated:  October 26, 2005