IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                    )
THE ROCKPORT COMPANY, LLC,                      )
                                    Plaintiff,                    )
                                                                    )          C.A. No. 04-12714 WGY
v.                                                                   )
                                                                    )
E. S. ORIGINALS, INC.,                                     )
                                    Defendant.                 )
_____)

### AFFIDAVIT OF SHEPARD DAVIDSON

I, Shepard Davidson, on oath do hereby depose and state as follows:

1.      I am an attorney licensed to practice law in the Commonwealth of Massachusetts,

am admitted to practice before this Court and am counsel to plaintiff in the above entitled matter.

2.      Attached hereto as Exhibit A are true excerpts from the Transcript of the First

E.S. Originals, Inc. Rule 30(b)(6) Deposition taken in this matter.

3.      Attached hereto as Exhibit B are true copies of severance agreements which were

produced by defendant in the above-entitled matter.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 26TH DAY OF OCTOBER, 2005.

/s/Shepard Davidson
Shepard Davidson

# EXHIBIT A

1

1   IN THE UNITED STATES DISTRICT COURT

2   DISTRICT OF MASSACHUSETTS

3   CIVIL ACTION NO. 04-12714 WGY

4   ------------------------------X
    THE ROCKPORT COMPANY, LLC,
5                           Plaintiff,
              -against-
6   E.S. ORIGINALS, INC.,
                            Defendant.
7   ------------------------------X

8                       Thursday, May  26, 2005
                        9:55 a.m. - 1:51 p.m.
9

10      Deposition of EDWARD ANTEBY, taken by

11  Plaintiff, pursuant to Notice dated April 13,

12  2005, at the offices of LeBoeuf, Lamb, Greene &

13  MacRae, L.L.P., 125 West 55th Street, New York,

14  New York, before Ellen Marie Gumpel, a Certified

15  Shorthand Reporter, Registered Professional

16  Reporter and Notary Public within and for the

17  State of New York.

18

19

20

21

22

23

24

25

1    Rockport were to terminate us, it was discussed.

2         Q.    So are you telling me that ESO

3    didn't have any discussions along the lines of,

4    We need to stop fulfilling our obligations under

5    the license agreement?

6              Before Rockport terminated.

7         A.    I believe ESO recognizes that when

8    the license agreement is there, it is a contract

9    and we have obligations to fulfill.  As long as

10   the contract is in place, we have obligations

11   that we have to live up to.  We were prepared to

12   live up to those obligations.

13             Through whatever discussions there

14   were, Rockport determined that it was best to

15   terminate E.S. Originals.

16        Q.    Let's go back to Mr. Shalom's

17   declaration, paragraph 7.  It says, By late

18   2003, ESO had determined that it was not sound

19   business to continue to pay minimum royalties,

20   correct?

21        A.    Correct; that didn't free us of the

22   obligation to do so.

23        Q.    Okay.

24        A.    And we were doing so.

25        Q.    Were there any discussions

90

1    internally at ESO about what ESO would do if

2    Rockport said, We understand you're having a

3    hard time, but we want you to keep fulfilling

4    your obligations under the license agreement?

5        A.    We would have no choice but to

6    continue doing so.

7        Q.    I understand you're saying that.  I

8    am asking you if there were any conversations

9    about that.

10       A.    There may have been.  I can't say

11   for certain.

12       Q.    You're not aware of any?

13       A.    There may have been.  It was three

14   years ago, three years ago or two years.

15       Q.    You don't remember any?

16       A.    I do not recall any specifically.

17       Q.    And you didn't ask anybody in

18   preparation for the deposition about any

19   conversations along those lines?

20       A.    Correct.

21       Q.    Have you now told me everything

22   that you have been made aware of about ESO's

23   discussions regarding the fact that it would not

24   be sound business practice for it to continue to

25   pay minimum royalties when sales were at levels

 1     that meeting, do you?

 2          A.      Having not been there, I can't

 3     answer.

 4          Q.      And you didn't ask Mr. Esses from

 5     his perspective what was said at that meeting?

 6          A.      Correct.

 7          Q.      And there was nobody else present

 8     at that meeting that you're aware of?

 9          A.      Having not been there, I can't

10     answer.

11          Q.      Now, what happened after that

12     meeting on ESO's end with respect to the

13     Rockport division?

14               Strike that.

15               Let me ask you this.

16               Before that meeting, did ESO

17     continue to fulfill all of its obligations under

18     the license agreement?

19          A.      With the exception of meeting its

20     minimum sales guarantees, we continued

21     operations full steam.

22          Q.      After that meeting between

23     Mr. Esses and Mr. Paterno, did ESO continue to

24     fulfill all of its obligations under the license

25     agreement of the minimum sales?

93

```
 1        A.      At some point after that meeting,
 2   we did not.
 3        Q.      ESO stopped fulfilling those
 4   obligations before Rockport terminated the
 5   license agreement; isn't that correct?
 6        A.      Correct.
 7        Q.      Why?
 8        A.      Without knowing the full nature of
 9   the conversation between Eddie Esses and
10   Rick Paterno, I don't know that I could give
11   that answer.
12        Q.      Are you aware of any contingency
13   that ESO had if Rockport refused to let ESO out
14   of any of its obligations under the license
15   agreement?
16        A.      E.S. Originals would have continued
17   to pay its royalties as obligated by the
18   contract.
19        Q.      It had no other contingent plan
20   other than to just go along and do the best that
21   it could?
22        A.      Yes.
23        Q.      Paragraph 9 of the Shalom
24   declaration says, "Rockport appeared to
25   understand and accept ESO's business decision."
```

98

1        A.      No.

2        Q.      Was there any other notification to

3    Rockport by ESO about -- well, strike that.

4                When did ESO notify its Rockport

5    division -- well, strike that.

6                ESO had a Rockport division,

7    correct?

8        A.      Correct.

9        Q.      And I think you said Mr. Helter was

10   president of that division?

11       A.      At that time, yes.

12       Q.      Was he the first person that was

13   notified in the division that the division was

14   going to be shut down?

15       A.      I believe he was.

16       Q.      Who notified him?

17       A.      I believe Eddie Esses did.  I'm

18   sorry.  Eddie Esses and I.

19       Q.      Tell me what was said in that

20   meeting.

21       A.      Pointing out to him the extent of

22   the losses that that division was incurring and

23   how it was not -- and there was a need for

24   E.S. Originals -- I'm trying to recall how we

25   phrased it to him.  We explained to him the

101

1    Paterno.

2        Q.    And you believe it was roughly

3    within a week?

4        A.    Yeah.

5        Q.    Were the other Rockport division

6    employees -- strike that.

7              Roughly how many Rockport division

8    employees were there at that time; 10, 50, 100,

9    200?

10       A.    Ten or twelve.

11       Q.    How were they notified?

12       A.    Mr. Helter had a private

13   conversation with each of them.

14       Q.    So it was strictly oral?

15       A.    Yeah.  It was an oral notification

16   and they were given a severance package.

17       Q.    Can you list for me those other

18   Rockport division people?

19       A.    I believe in part of the

20   documentation we provided, there was a list of

21   employees.

22       Q.    Okay.

23       A.    It would be hard for me to remember

24   all of their names.

25       Q.    And the only documentation that

102

1   you're aware of regarding their termination is

2   the severance package that each of them

3   received?

4       A.    Yes.

5       Q.    None of them continued working for

6   ESO in some other capacity?

7       A.    I would really need to look at the

8   list of names, but I believe not.

9       Q.    Are you aware of anything else that

10  you haven't told me with respect to the

11  notification of the ESO Rockport division

12  employees being told that the Rockport division

13  was being closed down?

14      A.    I believe I've answered to the best

15  of my ability.

16                      (ESO Deposition Exhibit 13

17  for identification, e-mail addressed to Edward

18  Anteby from DRHelter dated November 7, 2003.)

19      Q.    Let me show you Exhibit No. 13,

20  Mr. Anteby, and ask you if you recognize this as

21  a November 7, 2003 e-mail from David Helter to

22  you.

23      A.    Uh-huh.

24      Q.    Do you recognize it?

25      A.    Yes.

103

1          Q.    Now, the subject line says, "Re:
2     FW:  October 26, 2003."
3                Do you know what that means?
4          A.    There may have been a previous
5     e-mail.
6          Q.    Do you remember receiving this
7     e-mail?
8          A.    Pretty well.
9          Q.    Did you respond to Mr. Helter?
10         A.    I don't believe we did.  If we did,
11    it would have been in the e-mail correspondence.
12         Q.    You didn't have a verbal
13    conversation with him?
14         A.    I don't believe we did.
15         Q.    Who are the ccs noted on this
16    e-mail; do you know?
17         A.    Craig Teed, Diane Jarecki, Deborah
18    Miller.  Former employees of Rockport Kids.
19         Q.    So you don't know if October 26th
20    was the day that the Rockport division was
21    terminated?
22         A.    I don't recall the exact date.
23         Q.    The day that you told Mr. Helter
24    that you were closing the division down, was
25    that the day you closed the showroom down?

104

1          A.    The day we closed the division

2    down, there were no further employees in that

3    showroom.  By contractual obligation, we had to

4    have a separate showroom specifically for

5    Rockport Kids and we did.

6          Q.    When did you close the showroom

7    down?

8          A.    If you don't mind, what do you mean

9    "closed down."  We stopped having employees

10   there the day that all the employees were

11   terminated.

12         Q.    So it was not functioning as a

13   showroom after you terminated the employees; is

14   that fair to say?

15         A.    Correct.  Yes.

16         Q.    You didn't close it down before?

17         A.    No, no.  If I may, up until the day

18   the division was closed, we were pumping full

19   steam ahead.  I believe we produced documents

20   that show we had a buy plan in place.  We had

21   expenses that we were paying.  We had guys out

22   there calling on salespeople.

23         Q.    You understand under the license

24   agreement, ESO was obligated to have the

25   showroom; is that right?

Edward Anteby                                    05/26/2005

105

1        A.      Correct.  Yes.

2        Q.      Okay.

3                Wasn't ESO still obligated until

4    the contract was terminated to have that

5    showroom?

6        A.      The showroom was in existence.

7        Q.      Okay.

8        A.      I believe we provided rent receipts

9    for quite a period before and after.

10       Q.      Can you turn to paragraph 19 of the

11   license agreement, please.

12               That paragraph references various

13   obligations that ESO has under the license

14   agreement; is that correct?

15       A.      Uh-huh.  Yes.

16       Q.      And ESO stopped fulfilling those

17   obligations, at least, some of them, on the day

18   that it terminated all of the Rockport division

19   employees; is that correct?

20       A.      Correct.

21       Q.      What was the basis for ESO ceasing

22   to fulfill its obligations under paragraph 19 on

23   that day?

24       A.      Having not been part of the

25   conversation between Mr. Esses and Mr. Paterno,

Edward Anteby                                                    05/26/2005

119

1          Q.      Are you aware, Mr. Anteby, of any

2    oral statement that Mr. Paterno made at any time

3    to anybody indicating that Rockport would waive

4    any right that it had to sue ESO for a breach of

5    the license agreement?

6          A.      I'm not aware of any statement

7    made.

8          Q.      Are you aware of any written

9    document that states that Rockport would waive

10   any right it might have to sue ESO for a breach

11   of the license agreement?

12         A.      I'm not aware of any document.

13         Q.      Are you aware of any statement

14   Rick Paterno made or any other representative of

15   Rockport made at any time that Rockport was

16   releasing ESO from any obligation it had under

17   the license agreement?

18         A.      Other than this letter of

19   termination?

20         Q.      Yes.

21         A.      No.

22         Q.      And you're not aware of any

23   document other than Exhibit 15 which indicates

24   that Rockport is releasing ESO from any

25   obligation under the license agreement, are you?

145

1

2                    C E R T I F I C A T E

3       STATE OF NEW YORK    )

4                             :  ss.

5       COUNTY OF NEW YORK   )

6

7               I, ELLEN MARIE GUMPEL, a Certified

8       Shorthand Reporter and Notary Public within and

9       for the State of New York, do hereby certify:

10              That EDWARD ANTEBY, the witness whose

11      deposition is hereinbefore set forth, was duly

12      sworn by me and that such deposition is a true

13      record of the testimony given by the witness.

14              I further certify that I am not

15      related to any of the parties to this action by

16      blood or marriage, and that I am in no way

17      interested in the outcome of this matter.

18              IN WITNESS WHEREOF, I have hereunto

19      set my hand this __14__ day of __June__,

20      2005.

21

22

23      _Ellen Marie Gumpel_

24         ELLEN MARIE GUMPEL, C.S.R., R.P.R.

25                              **CERTIFIED TRANSCRIPT**
                                **LEGALINK BOSTON**

# **EXHIBIT B**

**E.S. Originals, Inc.**
**Employee Change Form**

Date _10/2/03_

Name of Employee _CRAIG TARDIFF_

Social Security # _____

Home Address: _____    City/State _____

Secondary Address: _____    City/State _____    Zip Code _____

Zip Code _____

Current Position _____    New Position _____

New Employee _____ Yes _____ No

Replacement For _____    Department/Brand _____

**Salaried Employees Only:**

Current Base Salary $ _____    New Base Salary $ _____    Effective / /

Monthly Draw _____ Yes _____ **No**    $ Amount $ _____    1st or 2nd Payroll _____

Bonus To Earn on Net Sales - Percentage Amount _____%    For Mark-Ups Over _____%

Special Customer Information (For Salemen Only )

Insurance Paid For _____ Yes _____ No    Amount $ _____

Auto Lease Paid For _____ Yes _____ No    Amount $ _____

**Hourly Employees Only:**

Current Hourly Rate $ _____    New Hourly Rate $ _____    Effective / /

Special Information _____

Additional Information _TERMINATED 10/3/03_
_① PAY thru 10/3/03 + ONE (1) WEEK SEVER._

**(Corporate Use Only)**
Employee Signature _[signature]_    Date _10, 2, 03_

Supervisor's Signature _____    Date / /

Management's Signature _____    Date / /

Controller's Signature _[signature]_    Date _10, 2, 03_

Entered In Payroll System For Week Ending / /    Payroll Signature / /

*ERRITORY MGR –*
*MID-WEST –*
*1 WK VAC*

**E.S. Originals, Inc.**
**Employee Change Form**

Date  10/2/03

| | |
|---|---|
| Name of Employee | Diane JAneck; |
| Social Security # | |
| Home Address: | City/State ___ Zip Code |
| Secondary Address: | City/State ___ Zip Code |
| Current Position | New Position |
| New Employee ___ Yes ___ No | |
| Replacement For | Department/Brand |

**Salaried Employees Only:**

Current Base Salary  $ ___          New Base Salary  $ ___          Effective  / /

Monthly Draw ___ Yes ___ No          $ Amount  $ ___          1st or 2nd Payroll

Bonus To Earn on Net Sales – Percentage Amount ___ %          For Mark-Ups Over ___ %

Special Customer Information (For Salemen Only )

Insurance Paid For ___ Yes ___ No          Amount $ ___

Auto Lease Paid For ___ Yes ___ No          Amount $ ___

**Hourly Employees Only:**

Current Hourly Rate  $ ___          New Hourly Rate  $ ___          Effective  / /

Special Information

Additional Information   TERMINATED 10/3/03
① Pay thru 10/3 + ONE (1) week severance

**(Corporate Use Only)**

| | | Date | |
|---|---|---|---|
| Employee Signature | | Date | 10 , 2 , 03 |
| Supervisor's Signature | | Date | / / |
| Management's Signature | | Date | / / |
| Controller's Signature | _Richard Bucall_ | Date | 10 , 2 , 03 |
| Entered In Payroll System For Week Ending | / / | Payroll Signature | / / |

# Richard Bacall

**From:**    Richard Bacall
**Sent:**    Friday, October 24, 2003 10:02 AM
**To:**      'Ddjarecki@aol.com'
**Subject:** RE: diane jarecki

Diane,

Two checks are being mailed out to you today.  One check is for five vacation days that you earned ($1,057.69) and one check is for the outstanding expenses you submitted ($442.34).  ESO does not pay for sick days not used (See Page 6 of the Employee Manual).  The checks left via regular mail.  You should receive them by Monday.


Regards,
Rich

> -----Original Message-----
> **From:** Ddjarecki@aol.com [mailto:Ddjarecki@aol.com]
> **Sent:** Thursday, October 23, 2003 3:46 PM
> **To:** Richard Bacall
> **Subject:** diane jarecki
>
> Richard,
>
> Please update me on the following open issues. Per our phone conversation, you said the vacation pay would be paid and the other issues would be resolved in the next few days. Please update me so that I can take the necessary steps to cover things at my end.
>
> vacation pay
> unpaid sick days
> final expense report
> commission
>
> Regards,
> Diane Jarecki



SENDER:
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address

2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

DIANE JARECKI
5165 N. PINE BLUFF DR
NEW PALESTINE IN 46163

4a. Article Number

4b. Service Type
☐ Registered          ☐ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X

PS Form 3811, December 1994          102595-97-B-0179    Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7000 1670 0009 2147 3043

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 442 |

Sent To  DIANE JARECKI
Street, Apt. No.; or PO Box No.  5165 N. PINE BLUFF DR
City, State, ZIP+4  NEW PALESTINE IN 46163

PS Form 3800, May 2000          See Reverse for Instructions

**E.S. Originals, Inc.**
**Employee Change Form**

Date    10/6/03

Name of Employee    _SUSAN DeLUCA_    Social Security # _____

Home Address: _____    City/State _____    Zip Code _____

Secondary Address: _____    City/State _____    Zip Code _____

Current Position _____    New Position _____

New Employee _____ Yes _____ No

Replacement For _____    Department/Brand _____

**Salaried Employees Only:**

Current Base Salary $ _____    New Base Salary $ _____    Effective / /

Monthly Draw _____ Yes _____ No    $ Amount $ _____    1st or 2nd Payroll _____

Bonus To Earn on Net Sales - Percentage Amount _____%    For Mark-Ups Over _____%

Special Customer Information (For Salemen Only ) _____

Insurance Paid For _____ Yes _____ No    Amount $ _____

Auto Lease Paid For _____ Yes _____ No    Amount $ _____

**Hourly Employees Only:**

Current Hourly Rate $ _____    New Hourly Rate $ _____    Effective / /

Special Information _____

Additional Information    _TERMINATED 10/3/03_
☺    _PAY through 10/3/03_

**(Corporate Use Only)**
Employee Signature    _Susan M. DeLuca_    Date / /

Supervisor's Signature    _____    Date / /

Management's Signature    _____    Date / /

Controller's Signature    _Richard Barall_    Date 10/8/03

Entered In Payroll System For Week Ending    / /    Payroll Signature    / /

E.S. Originals, Inc.
**Employee Change Form**

Date _10/2/03_

| | |
|---|---|
| Name of Employee _Sharon Duffy_ | Social Security # _____ |
| | City/State _____ Zip Code _____ |
| Home Address: _____ | |
| | City/State _____ Zip Code _____ |
| Secondary Address: _____ | |
| | New Position _____ |
| Current Position _____ | |
| New Employee _____ Yes _____ No | |
| | Department/Brand _____ |
| Replacement For _____ | |

**Salaried Employees Only:** _____

Current Base Salary $ _____  New Base Salary $ _____  Effective / /

Monthly Draw _____ Yes _____ No   $ Amount $ _____  1st or 2nd Payroll _____

Bonus To Earn on Net Sales - Percentage Amount _____ %   For Mark-Ups Over _____ %

Special Customer Information (For Salemen Only )

Insurance Paid For _____ Yes _____ No   Amount $ _____

Auto Lease Paid For _____ Yes _____ No   Amount $ _____

**Hourly Employees Only:** _____

Current Hourly Rate $ _____  New Hourly Rate $ _____  Effective / /

Special Information _____

Additional Information _TERMINATED 10/3/03_
① _Pay thru 10/3/03_

| (Corporate Use Only) | | |
|---|---|---|
| Employee Signature _Sharon Duffy_ | Date | _10, 2, 03_ |
| Supervisor's Signature _____ | Date | / / |
| Management's Signature _____ | Date | / / |
| Controller's Signature _Richard Bavuso_ | Date | _10, 2, 03_ |
| Entered In Payroll System For Week Ending / / | Payroll Signature | / / |

*VACATION*
*MKTG. MGR*
*1WK.*

**E.S. Originals, Inc.**
**Employee Change Form**

Date _____10/2/03_____

| | |
|---|---|
| Name of Employee | FAWN D'ATRI |
| Social Security # | |
| Home Address: | |
| City/State | |
| Zip Code | |
| Secondary Address: | |
| City/State | |
| Zip Code | |
| Current Position | |
| New Position | |
| New Employee _____ Yes _____ No | |
| Replacement For | |
| Department/Brand | |

**Salaried Employees Only:**

Current Base Salary  $ _____   New Base Salary  $ _____   Effective  / /

Monthly Draw _____ Yes _____ No   $ Amount  $ _____   1st or 2nd Payroll _____

Bonus To Earn on Net Sales - Percentage Amount _____ %   For Mark-Ups Over _____ %

Special Customer Information (For Salemen Only ) _____

Insurance Paid For _____ Yes _____ No   Amount $ _____

Auto Lease Paid For _____ Yes _____ No   Amount $ _____

**Hourly Employees Only:**

Current Hourly Rate  $ _____   New Hourly Rate  $ _____   Effective  / /

Special Information _____

Additional Information  TERMINATED 10/3/03
1 - PAY thru 10/3/03 + Two (2) WEEKS SEVERANCE

**(Corporate Use Only)**
Employee Signature  *FAWN D'ATRI*   Date  / /
Supervisor's Signature _____   Date  / /
Management's Signature _____   Date  / /
Controller's Signature  *Richard Barell*   Date  10/2/03
Entered In Payroll System For Week Ending  / /   Payroll Signature  / /

**E.S. Originals, Inc.**
**Employee Change Form**

Date _10/2/03_

| | |
|---|---|
| Name of Employee _Keith Colton_ | Social Security # _____ |
| Home Address: _____ | City/State _____ Zip Code ___ |
| Secondary Address: _____ | City/State _____ Zip Code ___ |
| Current Position _____ | New Position _____ |
| New Employee _____ Yes _____ No | |
| Replacement For _____ | Department/Brand _____ |

**Salaried Employees Only:**

| | |
|---|---|
| Current Base Salary $ _____ | New Base Salary $ _____ Effective / / |
| Monthly Draw _____ Yes _____ No | $ Amount $ _____ 1st or 2nd Payroll |
| Bonus To Earn on Net Sales - Percentage Amount _____ % | For Mark-Ups Over _____ % |
| Special Customer Information (For Salemen Only) _____ | |
| Insurance Paid For _____ Yes _____ No | Amount $ _____ |
| Auto Lease Paid For _____ Yes _____ No | Amount $ _____ |

**Hourly Employees Only:**

| | |
|---|---|
| Current Hourly Rate $ _____ | New Hourly Rate $ _____ Effective / / |
| Special Information _____ | |

Additional Information _terminated 10/3_
① _Pay thru 10/3 + Two (2) wks severance._

| (Corporate Use Only) | | |
|---|---|---|
| Employee Signature _Keith Colton_ | Date _10 2 03_ |
| Supervisor's Signature _____ | Date / / |
| Management's Signature _(signature)_ | Date / / |
| Controller's Signature _Richard Bacal_ | Date _10 2 03_ |
| Entered In Payroll System For Week Ending / / | Payroll Signature _____ / / |

**E.S. Originals, Inc.**
**Employee Change Form**

Date  10/3/03

| | | | |
|---|---|---|---|
| Name of Employee | Melissa CARamonica | Social Security # | |
| Home Address: | | City/State | Zip Code |
| Secondary Address: | | City/State | Zip Code |
| Current Position | | New Position | |
| New Employee | _____ Yes _____ No | | |
| Replacement For | | Department/Brand | |

**Salaried Employees Only:**

| | | | |
|---|---|---|---|
| Current Base Salary | $ | New Base Salary $ | Effective / / |
| Monthly Draw | _____ Yes _____ No | $ Amount $ | 1st or 2nd Payroll |
| Bonus To Earn on Net Sales - Percentage Amount | % | For Mark-Ups Over | % |
| Special Customer Information (For Salesmen Only ) | | | |
| Insurance Paid For | _____ Yes _____ No | Amount $ | |
| Auto Lease Paid For | _____ Yes _____ No | Amount $ | |

**Hourly Employees Only:**

| | | | |
|---|---|---|---|
| Current Hourly Rate | $ | New Hourly Rate $ | Effective / / |
| Special Information | | | |

Additional Information  TERMINATED 10/3/03
① Pay thru 10/3 + one(1) WK Severance

| | | |
|---|---|---|
| (Corporate Use Only) Employee Signature | Melissa Caramonica | Date 10, 3, 03 |
| Supervisor's Signature | | Date / / |
| Management's Signature | | Date / / |
| Controller's Signature | Michael Burall | Date 10, 3, 03 |
| Entered In Payroll System For Week Ending / / | Payroll Signature | / / |

**E.S. Originals, Inc.**
**Employee Change Form**

Date _10/2/03_

| | |
|---|---|
| Name of Employee _Dan Ellis_ | Social Security # _____ |
| Home Address: _____ | City/State _____  Zip Code _____ |
| Secondary Address: _____ | City/State _____  Zip Code _____ |
| Current Position _____ | New Position _____ |
| New Employee _____ Yes _____ No | |
| Replacement For _____ | Department/Brand _____ |

**Salaried Employees Only:** _____

| | |
|---|---|
| Current Base Salary  $ _____ | New Base Salary  $ _____  Effective _/_/_ |
| Monthly Draw _____ Yes _____ No | $ Amount  $ _____  1st or 2nd Payroll _____ |
| Bonus To Earn on Net Sales - Percentage Amount _____ % | For Mark-Ups Over _____ % |
| Special Customer Information (For Salemen Only ) _____ | |
| Insurance Paid For _____ Yes _____ No | Amount $ _____ |
| Auto Lease Paid For _____ Yes _____ No | Amount $ _____ |

**Hourly Employees Only:** _____

| | |
|---|---|
| Current Hourly Rate  $ _____ | New Hourly Rate  $ _____  Effective _/_/_ |
| Special Information _____ | |

Additional Information _TERMINATED 10/3/03_
① _Pay thru 10/3/03.  Two (2) WEEKS SEVERANCE PAY_

| | | |
|---|---|---|
| **(Corporate Use Only)** Employee Signature _(signature)_ | Date | _10 / 2 / 03_ |
| Supervisor's Signature _____ | Date | _/_/_ |
| Management's Signature _____ | Date | _/_/_ |
| Controller's Signature _(signature)_ | Date | _10 / 2 / 03_ |
| Entered In Payroll System For Week Ending _/_/_ | Payroll Signature | _/_/_ |

October 6, 2003

Eddie,

Attached are all of my final expense reports. I can promise you every expense is "legit", however a few questions may arise on the following:

1) Shoe Samples: obviously not all shoes will be properly logged now that I am gone. Some shoes have been photographed, some were sent directly to the Tingho without being photographed. They were all used for work purposes and are floating around the RK showroom.

2) Phone Bill: my mobile bill may seem high (it is 2 months worth of charges) due to direct calls to/from my phone while in China. PLEASE NOTE: I will have one more phone expense from the middle of September's China trip. As soon as I rec. my bill I will send it to you for processing (while away in China a few weeks back, by father became ill, thus I was on the phone more than usual, thus charges will be a bit higher than usual.)

3) Severance Policy:  As ESO's policy is not be terribly generous, I want to note I only took 2 days of "official" vacation this year, thus I should be compensated for the remainder 3 days.  Also most companies give a blanket severance (in ESO's case 2 weeks) as well as one week's pay per year of service. This would give me an additional week of severance for my almost 2 years of service at ESO.  It would be greatly appreciated if you took this into consideration.

Feel free to contact me if you have any questions.

Dan Ellis
18 Cliff Ave.
Scituate,  MA 02066
(h) 781-545-3308
(m) 781-308-3308
(e) massshoes@aol.com

# E.S. Originals inc.

450 WEST 33RD STREET, NEW YORK, N.Y. 10001 (212) 736-8124 • FAX (212) 736-8366

**E.S.O.**
FOUNDED 1954

Daniel Ellis
18 Cliff Avenue
Scituate, MA 02066

October 23, 2003

Re: Vacation Payout/Additional Severance

Dan,

     As per my telephone conversation with you on Wednesday, October 22, 2003, I am enclosing with this letter two (2) checks in the amount of $2,307.69 and $1,384.62 less applicable taxes. The first check covers three (3) days of vacation owed and the second check represents one (1) week of additional severance. As agreed upon, this letter settles all outstanding payments that are due to you. Please use the label that was sent to you last week to send back your computer equipment to my attention. The contents of this final settlement letter is confidential and is not intended for sharing with others.

     Once again, best of luck in the future and if there is anything I can do including a providing a reference for you do not hesitate to call me.

Sincerely,

Richard Bacall
Controller –ESO

*Manufacturers and Importers of fashion footwear*



# E.S. Originals inc.



450 WEST 33RD STREET, NEW YORK, N.Y. 10001 (212) 736-8124 • FAX (212) 736-8366

Deborah Miller
391 Newtonville Avenue
Apt#2R
Newtonville, MA 02460

October 23, 2003

Re: Vacation Payout

Dear Deborah,

As per my telephone conversation with you on Wednesday, October 22, 2003, I am enclosing with this letter a check in the amount of $4,230.77 less applicable taxes. This check covers two (2) weeks of vacation pay. As agreed upon, this letter settles all outstanding payments that are due to you and covers everything mentioned in your e-mail to me dated October 20, 2003. Please use the label that was sent to you last week to send back your computer equipment to my attention.

Once again, best of luck in the future and if there is anything I can do including a providing a reference for you do not hesitate to call me.

Sincerely,

Richard Bacall
Controller –ESO

*Manufacturers and Importers of fashion footwear*

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Deborah Miller
391 Newtonville Ave
Apt. #212
Newtonville MA 02460

4a. Article Number

4b. Service Type
☐ Registered        ☐ Certified
☐ Express Mail      ☐ Insured
☐ Return Receipt for Merchandise ☐ COD

7. Date of Delivery 10/28/03

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X _____

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994    102595-97-B-0179    Domestic Return Receipt

Is your **RETURN ADDRESS** completed on the reverse side?

Thank you for using Return Receipt Service.

---

7000 1670 0009 2147 2992

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

| | |
|---|---|
| Postage | $ .37 |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.42 |

Postmark Here

Sent To Deborah Miller
Street, Apt. No.; or PO Box No. 391 Newtonville Ave
City, State, ZIP+4 Newtonville MA 02460

PS Form 3800, May 2000    See Reverse for Instructions

**E.S. Originals, Inc.**
**Employee Change Form**

Date  10/2/03

Name of Employee  Deborah Miller

Social Security # _____

Home Address: _____    City/State _____    Zip Code _____

Secondary Address: _____    City/State _____    Zip Code _____

Current Position _____    New Position _____

New Employee _____ Yes _____ No

Replacement For _____    Department/Brand _____

**Salaried Employees Only:** _____

Current Base Salary  $ _____    New Base Salary  $ _____    Effective  / /

Monthly Draw _____ Yes _____ No    $ Amount  $ _____    1st or 2nd Payroll _____

Bonus To Earn on Net Sales - Percentage Amount _____ %    For Mark-Ups Over _____ %

Special Customer Information (For Salemen Only ) _____

Insurance Paid For _____ Yes _____ No    Amount $ _____

Auto Lease Paid For _____ Yes _____ No    Amount $ _____

**Hourly Employees Only:** _____

Current Hourly Rate  $ _____    New Hourly Rate  $ _____    Effective  / /

Special Information _____

Additional Information   TERMINATED 10/3/03
① PAY thru 10/3 + 1 wk severance

(Corporate Use Only)
Employee Signature _____    Date  / /

Supervisor's Signature _____    Date  / /

Management's Signature _____    Date  / /

Controller's Signature _____    Date  10/2/03

Entered In Payroll System For Week Ending  / /    Payroll Signature _____    / /