IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROCKPORT COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> E.S. ORIGINALS, INC., <br><br> Defendant. | CIVIL ACTION NO. 04-12714-WGY |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

In its response to the renewed summary judgment motion of Defendant E.S. Originals, Inc. ("ESO"), Plaintiff Rockport Company, LLC ("Rockport") now effectively concedes that the only damages it is seeking arise from the difference between the minimum royalties that the company would have received from ESO and the royalties that it has received from replacement licensee BBC International, LLC ("BBC") (D.I. 31 at 8 n.20). As Rockport's own statements help to establish, however, the company's decision to terminate the license with ESO precludes Rockport as a matter of law from seeking damages based upon post-termination royalties.

ARGUMENT

**I.    By Terminating The License Agreement During the Second Year of the Contract, Rockport Released ESO from an Obligation to Pay a Minimum Royalty for the Third Year of the Contract**

Rockport argued that "the difference in value to Rockport between the ESO License Agreement and the BBC License Agreement" – a total of $701,768.96 – constituted the company's "damages." Rockport calculated that figure from the royalties that Rockport would have been collected from ESO during the third Contract Year, had

Rockport not terminated the Agreement. Rockport, by electing to terminate, however, released ESO from its obligation to pay a minimum royalty for the third Contract Year. Rockport conceded this point, but then asked this Court for a remedy that would afford the same result.

Courts treat provisions requiring minimum royalty payments like provisions for rent. See, e.g., CAL-AM Corp. v. Spence, 659 F.2d 1034, 1036 (10th Cir. 1981) (collecting cases). Therefore, the license between Rockport and ESO can be analogized to a lease between a landlord and a tenant. See, e.g., Agreement ¶¶ 38-39 (providing that "no rights under this Agreement whatsoever shall extend to Licensee beyond the expiration or termination of this Agreement" and that upon such expiration or termination "Licensee shall immediately cease all use of the License.").

Massachusetts courts recognize that a landlord has no baseline right to collect rent from a tenant after terminating the tenant's lease. In Priestley v. Sharaf's, Inc., 4 Mass. App. Ct. 218, 222, 344 N.E. 2d 905, 908 (Mass. App. Ct. 1976), for example, the court explained that absent an indemnification clause, the plaintiff property owner had "no right to recover rent for any period subsequent to the termination of the lease." Likewise, the Supreme Judicial Court concluded in Sutton v. Goodman that a landlord had no right to recover rent after he had expelled the tenant and took possession. 80 N.E. 608, 609 (Mass. 1907) ("The defendant's right to recover rent…for the month of January was destroyed by his termination of the lease on the second day of the month.").

Therefore, absent a provision in the contract indemnifying the landlord for a shortfall in rent after termination of the tenancy, a landlord that resumes possession of the

premises accepts the tenant's surrender of the property and waives the right to pursue the tenant for rent associated with subsequent rental periods.

In the case at hand Rockport explicitly terminated the License Agreement and thereby reclaimed its property right to the Rockport trademarks while releasing ESO from an obligation to pay a minimum royalty.

The License Agreement contains specific provisions establishing that termination is tantamount to acceptance of surrender under traditional landlord-tenant law. As ESO's opening memorandum explained, Paragraph 12 of the Agreement provides that the amount of royalties "during any Contract year *included in the Term*" (emphasis added) could not be less than the negotiated guaranteed minimum. Paragraph 1 likewise defines the "Initial Term" as the period expiring on June 30, 2005 "or on *such earlier date as any party may terminate this Agreement* in accordance with its terms" (emphasis added). Thus, terminating the Agreement before the beginning of the third contract year shortened the Term and thereby released ESO from any guaranteed minimum royalty payment for the third Contract Year, just as accepting surrender of a lease extinguishes a landlord's right to collect rent for subsequent periods. Paragraph 15 clarifies the effect of termination on the schedule of payments:

> **Payments upon Expiration or Termination**. If this Agreement expires or is terminated *for any reason* before all payments hereunder have been made (including Guaranteed Minimum Royalties for the Contract Year in which such expiration or termination occurs), Licensee shall immediately thereafter submit a report and *pay to Rockport any remaining unpaid balance for the Contract Year in which such expiration or termination occurs*, even though the due date therefore has not yet occurred, and for any *prior* Contract Years.

(emphasis added).

This clause signifies that ESO is not liable for damages based upon post-termination royalties.[1] Because of the general remedial provisions that Rockport itself cited, there would be no reason to incorporate a contractual provision that simply reaffirms ESO's liability for debts associated with royalty payments that had already come due.[2] Instead, ¶ 15 clarifies that termination relieves ESO of any liability associated with *subsequent* Contract Years.  Rather than including a provision that expressly secured the right to seek post-termination royalties, Rockport did precisely the opposite.

Of course, the Agreement could have been written so as to require ESO to pay a post-termination minimum royalty.  For example, Rockport incorporated a different version of ¶ 15 into the License Agreement that it subsequently entered with BBC:

> **Payments upon Expiration or Termination**.  If this Agreement expires or is terminated *for* any reason before all payments hereunder have been made (including Guaranteed Minimum Royalties for the Contract Year in which such expiration or termination occurs), Licensee shall immediately thereafter submit a report and pay to Rockport any remaining unpaid balance for the Contract Year in which such expiration or termination occurs, even though the due date therefore has not yet occurred, and for any prior calendar years; **provided, however, that such payment shall not relieve Licensee from its obligation to pay to Rockport any remaining unpaid balance for any Contract Year after the Contract Year in which such expiration or termination occurs, and shall not**

---

[1] Even if the language discussed above were susceptible to another reasonable interpretation, it would still be appropriate to construe the ambiguity against Rockport, the drafter of the License Agreement.  See Bowser v. Chalifour, 135 N.E.2d 643, 645 (Mass. 1956) ("It is settled that a written instrument is construed strongly against the party who drew it if ambiguous or uncertain language is used."); Restatement (Second) of Contracts § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.").

[2] By the same token, conventional landlords need to incorporate explicit provisions securing their rights to collect *back rent* after termination.

> **limit in any way any other rights or remedies that Rockport may have with respect to such expiration or termination.**

(Ex. B to 3/30/05 Affidavit of Richard Paterno) (underscoring in original, emphasis added).[3]  By adding the text marked in bold, Rockport attempted to gain a right to terminate the agreement and still pursue BBC for damages based upon post-termination royalties.  No such language existed in the ESO License Agreement, however.  Instead, that contract established as a matter of law that Rockport *waived* any baseline right to a minimum royalty for the Third Year as a resulting of exercising its alternative right to terminate.

## II. Rockport's Argument Contradicts That Advanced in Its Original Response to ESO's Motion for Summary Judgment

In its response to ESO's original motion for summary judgment Rockport argued that "virtually every argument ESO makes" rested on the "incorrect assumption that the only consideration provided to Rockport pursuant to the License Agreement was money." (D.I. 16 at 4).  Rockport emphasized its claim that it had been damaged by ESO's alleged failure to "aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory."  (Id. at 4-6) (quoting Agreement ¶ 18(a)).  Finally, Rockport disputed ESO's position that paragraph 15 of the License Agreement – the provision concerning the effect of termination on ESO's obligation to pay royalties – was a liquidated damages provision.  Rockport indeed "respectfully suggest[ed] that construing paragraph 15 to be a liquidated damages

---

[3] Rockport and BBC entered into the contract in December 2003, a month *before* Rockport terminated the ESO License Agreement and almost a full year before Rockport actually filed the instant suit.

provision applicable to the claims asserted in this case would be nonsensical and irrational *because nothing suggests that the amount of minimum guaranteed royalties could bear any relationship to actual damages that might be caused by ESO failing to aggressively design, develop, manufacture, market, advertise, promote, merchandise, sell and service the Licensed Products in the Territory*." (Id. at 7) (emphasis added).

Rockport has now conceded it has no evidence of any damages except those associated with royalty payments (D.I. 28 at 5-8). The *only* damages that the company now claims to be seeking concern the difference in the levels of guaranteed minimum payments. (See D.I. 31 at 6) ("While Rockport was able to find another company to fulfill the most important of ESO's obligations, i.e., the promotion/marketing functions, that company, BBC, would not agree to pay nearly the same amount in royalties (or minimum guaranteed royalties) as ESO had been obligated to pay."). This argument is incongruous, however, in light of (1) Rockport's insistence that ESO's breach arose from its failure to continue its marketing and promotional functions coupled with (2) the company's previous rejection of the idea that minimum guaranteed royalties had anything to do with these functions.

## CONCLUSION

For the above stated reasons, ESO requests that summary judgment be entered against Rockport.

| | |
|---|---|
| Date: November 7, 2005 | Respectfully submitted |
| | ESO |
| | by its attorneys, |
| |  /s/ James J. Foster <br>James J. Foster, Esq., BBO # 553285<br>jfoster@wolfgreenfield.com<br>Laura Topper, Esq., BBO # 652364<br>ltopper@wolfgreenfield.com<br>Adam J. Kessel, Esq., BBO # 661211<br>akessel@wolfgreenfield.com<br>WOLF, GREENFIELD & SACKS, P.C.<br>600 Atlantic Avenue<br>Boston, Massachusetts 02210<br>Tel: (617) 646-8000<br>Fax: (617) 646-8646 |